## NEW v. OKLAHOMA.

**ERROR TO THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.**

No. 226.   Argued October 14, 17, 1904—Decided November 28, 1904.

Writs of error from this court to the Supreme Court of Oklahoma in capital cases do not lie.

The facts are stated in the opinion.

*Mr. Hugh T. Taggart* for plaintiff in error:
The Supreme Court of Oklahoma is a court of the United

States within § 6, act of February 6, 1889, 25 Stat. 655. See Organic Act of Oklahoma, May 2, 1890, § 2; *Moss* v. *United States*, 32 Wash. Law Rep. 342; *McAllister* v. *United States*, 141 U. S. 174; *Cross* v. *United States*, 145 U. S. 571. Jurisdiction of this court does not necessarily depend on the act of 1889. See §§ 9, 13, 28, Organic Act, *supra*, and §§ 4, 15, Judiciary Act of March 3, 1891; and assignments in 139 U. S. 707. This court entertained jurisdiction in *Queenan* v. *Oklahoma*, 190 U. S. 548.

*Mr. P. C. Simons*, Attorney General of the Territory of Oklahoma, for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

John T. New was tried on an indictment for murder in the District Court of Washita County, Oklahoma Territory, found guilty, and his punishment fixed by the jury at imprisonment for life.

The Crimes Act of Oklahoma provided that every person convicted of murder should "suffer death or imprisonment at hard labor in the Territorial penitentiary for life, at the discretion of the jury." Stat. Okla. 1893, p. 456, c. 25, § 13; Stat. Okla. 1890, c. 25, Art, 17, § 13.

Judgment was entered on the verdict and New was sentenced accordingly. He carried the case to the Supreme Court of the Territory and the judgment was affirmed. This writ of error was then allowed, and the objection is made that this court has no jurisdiction to review the judgments of the Supreme Court of Oklahoma in criminal cases for want of statutory provision to that effect.

By the "Act to provide a temporary government for the Territory of Oklahoma," approved May 2, 1890, 26 Stat. 81, c. 182, "the legislative power and authority of said Territory" was vested in the governor and legislative assembly, and the power extended "to all rightful subjects of legislation not

inconsistent with the Constitution and laws of the United States."

Section 28 provided: "That the Constitution and all the laws of the United States not locally inapplicable shall, except so far as modified by this act, have the same force and effect as elsewhere within the United States; and all acts and parts of acts in conflict with the provisions of this act are as to their effect in said Territory of Oklahoma hereby repealed;" and by a proviso section 1850 of the Revised Statutes, requiring the submission of territorial laws to Congress, was made inapplicable to Oklahoma.

By section 11 certain enumerated "chapters and provisions of the Compiled Laws of the State of Nebraska, in force November first, eighteen hundred and eighty-nine, in so far as they are locally applicable, and not in conflict with the laws of the United States or with this act, are hereby extended to and put in force in the Territory of Oklahoma until after the adjournment of the first session of the legislative assembly of said Territory, namely: . . . and of part three thereof, entitled 'Criminal Code.'"

This temporary provision was supplanted some months subsequently by laws passed by the Oklahoma legislative assembly. Statutes, Oklahoma, 1890. These statutes were elaborate and comprehensive, and embraced a crimes act, with due provision for procedure.

Section 9 of the organic act reads as follows:

"SEC. 9. That the judicial power of said Territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace. . . .

"   . . . and the said supreme and district courts, respectively, shall possess chancery as well as common-law jurisdiction and authority for redress of all wrongs committed against the Constitution or laws of the United States or of the Territory affecting persons or property. . . . Writs of error, bills of exception, and appeals shall be allowed in all cases from the final decisions of said district courts to the

supreme court under such regulations as may be prescribed by law, but in no case removed to the supreme court shall trial by jury be allowed in said court. Writs of error and appeals from the final decisions of said supreme court shall be allowed and may be taken to the Supreme Court of the United States in the same manner and under the same regulations as from the Circuit Courts of the United States, where the value of the property or the amount in controversy, to be ascertained by oath or affirmation of either party or other competent witness shall exceed five thousand dollars; . . ."

So far as review by this court is concerned, this is the usual provision, and is limited to civil cases. We are then brought to inquire whether any other statute may be invoked to sustain our jurisdiction.

Section 5 of the judiciary act of March 3, 1891, 26 Stat. 827, c. 517, provided that appeals or writs of error might be taken from the District and Circuit Courts directly to this court in certain enumerated classes of cases, among which were "cases of conviction of a capital or otherwise infamous crime." By amendment the words "or otherwise infamous" were stricken out, and it was declared that cases of convictions for an infamous crime not capital might be carried to the Circuit Courts of Appeals. 29 Stat. 492, c. 68.

By section 6, the judgments of the Circuit Courts of Appeals are made final in cases arising under the criminal laws.

And section 15 provides: "That the Circuit Court of Appeals in cases in which the judgments of the Circuit Courts of Appeal are made final by this act shall have the same appellate jurisdiction, by writ of error or appeal, to review the judgments, orders, and decrees of the Supreme Courts of the several Territories as by this act they may have to review the judgments, orders, and decrees of the District Court and Circuit Courts; and for that purpose the several Territories shall, by orders of the Supreme Court, to be made from time to time, be assigned to particular circuits."

But the case before us is a capital case and not included in

the criminal cases to which the jurisdiction of the Circuit Courts of Appeals extends. It is suggested that, as it follows that if this court has no jurisdiction, convictions for crimes not capital are reviewable on a second appeal, while convictions for a capital crime are not, this involves an absurdity, hardship or injustice, presumably not intended. We held, however, in *Folsom* v. *United States*, 160 U. S. 121, that the intention was plain and that the statute must be taken as it read.

There remains the act of February 6, 1889, 25 Stat. 655, c. 113, by the sixth section of which it was provided that "in all cases of conviction of crime, the punishment of which provided by law is death, tried before any court of the United States, the final judgment of such court against the respondent shall, upon the application of the respondent, be reëxamined, reversed, or affirmed by the Supreme Court of the United States upon a writ of error." As to this, however, it was ruled in *Cross* v. *United States*, 145 U. S. 571, that, in view of the terms of the whole section, the allowance of a writ of error to any appellate tribunal was not contemplated, but merely to review the judgment of the trial court.

It is thus seen that there is no statute giving appellate jurisdiction to this court over the judgments of the Supreme Court of Oklahoma in capital cases.

Reference is made to *Queenan* v. *Oklahoma*, 190 U. S. 548, in which we entertained jurisdiction in the absence of any suggestion as to the want of it. *United States* v. *Simms*, 1 Cranch, 252, is an instance of similar inadvertance, and when cited in *United States* v. *More*, 3 Cranch, 159, 172, Chief Justice Marshall disposed of it in these words: "No question was made, in that case, as to the jurisdiction. It passed *sub silentio*, and the court does not consider itself as bound by that case."

*Writ of error dismissed.*