## MAAS & WALDSTEIN CO. v. UNITED STATES.

Court of Claims. December 9, 1929.

No. 156.

Holmes, Paul & Havens, of New York City (Harold S. Deming, of New York City, of counsel), for plaintiff.

Charles R. Pollard, of Washington, D. C., for the United States.

Before BOOTH, Chief Justice, and GRAHAM and GREEN, Judges.

GRAHAM, Judge. This case involves a claim for interest on a claimed allowance of a refund. It grows out of the application to the facts, which will be briefly stated, of the following provisions of the Revenue Act of 1921, 42 Stat. 316:

"Sec. 1324. (a) That upon the allowance of a claim for the refund of or credit for internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund or credit at the rate of one-half of 1 per centum per month to the date of such allowance, as follows: * * *

"(2) if such amount was not paid under protest but pursuant to an additional assessment, from the time such additional assessment was paid. * * *"

The plaintiff states its contentions as follows:

(1) That it should be allowed interest on the overpayment of 1916 income tax in the

amount of $1,731.50, from November 14, 1917, the date on which the additional assessment was paid, to May 9, 1922, the date on which the schedule was signed by the Commissioner of Internal Revenue allowing the refund.

(2) That it should be allowed interest on the amount of $457,341.37, representing the net overpayment of income and excess profits taxes for the year 1917 ($462,038.34 less $4,696.97) from the date on which said taxes were paid, June 20, 1918, to the date on which the schedule allowing the said refund was signed by the Commissioner, May 9, 1922.

(3) That, if this court should decide that its income and excess profits taxes for the year 1917 were not paid under a specific protest within the meaning of section 1324(a) (1) of the Revenue Act of 1921, it should be allowed interest on the above-mentioned overpayment of $457,341.37 from six months after June 20, 1918, to May 9, 1922.

The defendant's contention in reply admits the first contention of plaintiff, and confines itself in its defense to the second upon the grounds:

(1) That the plaintiff, as required by the act, filed no specific protest when paying the tax; and

(2) That it filed no claim of refund in connection with the payment of said tax.

It would profit nothing in reaching a conclusion in the case to go into the details of the figures and facts involved. The questions first to be considered are those raised by the defendant as to whether the plaintiff "paid under a specific protest" and whether the allowance of overpayment was based upon a claim for a refund; that is to say, whether a claim for a refund was ever filed. The facts stated generally and in effect are as follows:

In February, 1918, before paying its taxes for the year 1917, plaintiff communicated with the Bureau of Internal Revenue, stating that it would like to have an opportunity to lay before the Commissioner the operation of law in its case, and to obtain his opinion as to whether or not the bureau would consider its statement as justifying an assessment under section 210 of the act.

Section 210 of the Revenue Act of 1917, gave to the Secretary of the Treasury and the Commissioner of Internal Revenue power to grant relief to taxpayers where invested capital could not be satisfactorily ascertained and it appeared that a taxpayer was paying a larger tax than other companies engaged in a like or similar trade or business. It is to be noted in passing that this section was passed upon by the Supreme Court in the Williamsport Wire Rope Co. Case, 277 U. S. 551, 561, 48 S. Ct. 587, 72 L. Ed. 985, which held that this court had no jurisdiction to review the conclusions of the Commissioner of Internal Revenue in ascertaining invested capital under this section and granting relief thereunder. Section 210 is not a taxing statute, and a protest against the Commissioner's conclusion or decision under it would be futile, and, even if it were made, would not entitle the plaintiff to relief in this court on account of either failure to make a special assessment or from an assessment which had been made and was unsatisfactory to the taxpayer, or a refusal to make a special assessment or make any change with regard to the plaintiff's invested capital, leaving it as under the return.

Thus it appears that the plaintiff was asking for a hearing under this section, and to its request the Commissioner replied on February 15, 1918, suggesting that it file a statement of the facts in writing covering its case, which statement would receive consideration. On March 28, 1918, plaintiff filed its tax return for the year 1917 and accompanied it with a statement of the character suggested by the Commissioner relative to a special assessment under section 210. In this statement it claimed that its tax under the requirements of the return was "proportionately larger than that of other representative concerns in the same line of business"; further, that the simple form and manner of its organization placed it "at a disadvantage in comparison with representative concerns in a similar trade or business," and that, under paragraph 4, article 52, of the Regulations, its "invested capital, when computed in the manner specified in the regulations, is manifestly seriously disproportionate to the taxable income," and concluded, "We request assessment in the manner provided for in article 52, referring also to articles 18 and 24, Regulation No. 41."

It thereafter paid the tax according to its return, on June 20, 1918, and in doing so stated that, together with its returns for corporation income tax, excess profits tax, and munitions tax "we filed a request on May 28 for assessment in the manner provided for in article 52, referring also to articles 18 and 24, Regulations 41."

On May 6, 1922, the Commissioner mailed to the plaintiff a copy of certificate of overassessment in connection with said taxes of $462,038.34, and thereafter paid a refund to the plaintiff on this basis, the details of which it is not necessary to note at this point.

The plaintiff is contending that it asked for a special assessment, and indicated its opinion that the amount assessed against it under its return was out of proportion to that assessed against corporations in a similar line of business, and that this request for a special assessment was a protest within the meaning of said section 1324(a) of the Revenue Act of 1921 and also constituted a claim for a refund.

The question is, Did it amount to a protest within the meaning of section 1324(a), and was it a claim for a refund within the meaning of that section. Taking up, first, the question of "protest" it is a term indicating disagreement or objection by the party making it and conveying to the other party this state of mind, and expressing disapprobation or dissent. What constitutes a protest in each case depends upon the facts which embody it. It is true that in the case of Greenport Basin & Construction Co. v. United States, 260 U. S. 512, 43 S. Ct. 183, 67 L. Ed. 370, the United States Supreme Court seems to have upheld the view of the lower court that a claim for abatement amounted to a protest, but it is to be observed here that visiting the plaintiff with knowledge of the law, it did not file a specific protest and it did not ask for an abatement. It simply requested a hearing by the Commissioner on a matter that was entirely within the discretion of the Commissioner to grant, upon the ground that otherwise it would be treated unfairly and called upon to pay taxes disproportionate to other companies in the same line of business. It was granted a refund, not because it would have been illegally assessed had the Commissioner refused to grant it, because, had he refused, the plaintiff would have been without remedy, as the matter was within his discretion, even if it had filed a formal protest and a formal claim for a refund. Had the plaintiff been refused relief, even granting that its statement was a claim for a refund, it could not have on appeal secured relief in this court. So that, visiting the plaintiff with knowledge of the law, it is not to be supposed that it intended either to file a protest or a claim for a refund.

A request for a special assessment, therefore, under these circumstances, does not convey the idea, the thought, or conviction that it was intended as or was a protest, or a claim for a refund, since it is clear that neither one would have been of any benefit to it as far as the decision of the Commissioner was concerned. The Commissioner made a special assessment and allowed it a refund.

He did not allow but refused interest, and the plaintiff here is in effect asking the court to increase the allowance of the Commissioner by allowing interest and passing upon his decision in a matter where his decision was final, and as to which this court has no jurisdiction. We think we are precluded under the decision in the Williamsport Wire Rope Case, supra, from doing so, as to do so would be to change the amount found by the Commissioner. More than that, we further are of opinion that section 1324(a) does not apply to a request for a special assessment, but only to claims where the action of the Commissioner is subject to review by this court. The plaintiff by the assessment under its return had not been illegally assessed as to its invested capital, for the decision of the Commissioner was final and legal.

But, aside from this, we are of the opinion that the request for a hearing and the subsequent statement filed do not constitute a protest within the meaning of the act. It is something different from a request for an abatement. It is merely a request to the Commissioner to take some action in a matter where his decision was final. For the same reason we think it was not a claim for a refund. Further, the taxes had not been paid, the Commissioner had indicated an intention to consider the plaintiff's suggestion, and the plaintiff was simply filing facts embodying its suggestion for consideration. There is nothing to show what amount was claimed or just how an amount could be arrived at. It was not known what the decision of the Commissioner would be, and it must have known that, should the decision be adverse to it, it could not recover on a claim as for refusing a refund.

In Kings County Savings Institution v. Blair, 116 U. S. 200, 6 S. Ct. 353, 29 L. Ed. 657, it was held that a claim for a refund could not be legally made until after the taxes had been paid. This asserted claim was filed simultaneously with the return, and the taxes were not paid until June 20, 1918.

We are of the opinion that the plaintiff is not entitled to recover under its contention numbered 2 above. The plaintiff is entitled to recover under its contention numbered 1, as set forth above, interest on the sum of $1,731.50 from November 14, 1917, to May 9, 1922. Let judgment be entered accordingly.

BOOTH, Chief Justice, and GREEN, Judge, concur.

WILLIAMS and LITTLETON, Judges, did not hear and took no part in the decision of this case.