**FREEPORT TEXAS CO. et al. v. UNITED STATES.***

**No. K–452.**

Court of Claims.
May 2, 1932.

*For supplemental opinion see —— F.(2d) ——.

H. Kennedy McCook, of Washington, D. C. (De Vries, Crawford & McCook, of Washington, D. C., on the brief), for plaintiffs.

Charles R. Pollard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Wright Matthews, of Washington, D. C., on the brief), for the United States.

Before GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

The facts in the case are stipulated and set forth at length in the findings, but we shall refer only to such facts as we consider necessary to understand the issues in the case.

The plaintiffs are affiliated corporations engaged in the business of producing and marketing sulphur. The Freeport Texas Company was the parent company and the owner of all of the capital stock of the other plaintiffs joined.

About April 1, 1918, the plaintiffs each filed a return for their income and excess profits tax for the fiscal year ending November 30, 1917, except that the Freeport Town Site Company filed no separate excess profits tax return. The Freeport Texas Company filed also a consolidated excess profits tax return for the affiliated group. The Commissioner of Internal Revenue examined and audited these returns in 1919, and reduced the depletion deduction, which resulted in an increase of the taxable income and in an increase of the total tax liability to $1,733,914. The difference between this amount and the amount of $108,471.23, shown by the original return, was paid by plaintiffs.

In June, 1919, the plaintiffs filed a consolidated income and profits tax return for the fiscal year ending November 30, 1918, and reported a consolidated invested capital of $37,285,083.98, which included an addition of $31,050,415.86 to the amount of consolidated invested capital and surplus as shown by the plaintiffs' books. This increase over the book value was based upon the original value of the sulphur deposits which the company owned. In adjusting the plaintiffs' tax liability for the fiscal year 1918, the Commissioner found the value of the sulphur deposits to be $13,375,857 at the date of acquisition, and this value was used for the purpose of determining the invested capital and depletion deductions after making certain adjustments for accrued depletion during the years 1913 to 1917, of which the amount $2,106,753.20 represents depletion for the fiscal year of 1917. The Commissioner found that plaintiffs' consolidated invested capital for the fiscal year 1918 was reduced by their failure to take adequate deductions for depletion and depreciation for the fiscal year 1917 in the amount of $691,806.80 for depletion and $29,860.10 for depreciation, making a total of $721,666.90. Subsequently the Commissioner made a re-examination of the plaintiffs' tax liability for the fiscal year ending November 30, 1917, and in the light of all the evidence determined it to be $1,003,720.84; the consolidated invested capital for 1917 was determined to be $16,605,060.92, and the consolidated net income was determined to be $4,384,445.36; computed the amount of overpayment of taxes to be $730,193.16, and held that the refund to which the plaintiffs were

entitled for the fiscal year 1917, due to their failure to take adequate deduction for depletion and depreciation, was $321,713.11, which was paid to plaintiffs. Thereafter the plaintiffs filed a claim for refund of $408,480.05, being the difference between the amount of refund allowed and paid and the total amount of overpayment. This application was denied by the Commissioner on the ground that the amount refunded was all that had been overpaid on account of the taxpayers' failure to take adequate deduction for depletion and depreciation. The issue in the case is whether this ruling of the Commissioner was correct.

Plaintiffs contend that the facts in the case bring it within the provisions of section 284 (e) of the Revenue Act of 1926, 44 Stat. 66, 26 USCA § 1065 (e), which provides as follows: "If the invested capital of a taxpayer is decreased by the commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any previous year or years, then the amount of such overpayment shall be credited or refunded, without the filing of a claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired."

On behalf of the defendant it is said that plaintiffs took as a deduction in their 1917 returns depletion in a much larger sum than was subsequently allowed. The argument is that it is not the deduction that the taxpayer failed to get, but only that which he fails to take, that is covered by the provisions set out above, and this construction finds some support from the fact that, where the taxpayer took a deduction in his return, which the Commissioner failed to allow, he had an adequate remedy for this disallowance at the time thereof. Upon this theory and under the facts in the case, the Commissioner might have refused to allow any refund whatever. The Commissioner, however, did allow a large refund. Defendant, however, does not urge the application of this theory and we do not find it necessary to pass upon it.

It will be observed at the outset that the plaintiffs seek to recover a refund of $408,-480.05 by reason of having failed to take deduction for depletion and depreciation for the fiscal year 1917, in the amount of $691,-806.80, and that the Commissioner has already allowed $321,713.11 upon the original claim, so that plaintiffs are asking for a reduction in taxes of $730,193.16 by reason of the failure to take deduction for depletion in the sum of $691,806.80. Or, in other words, plaintiffs claim a refund in a sum which exceeds the amount of the deductions which fix the amount of the refund. Counsel for the defendant say in argument that this is manifestly absurd. Without going so far as to say that it is impossible that such a result would follow, it is apparent that it is highly improbable, and we think it will appear clearly upon further consideration that all and probably the most of the overpayment did not result from the failure to take proper deductions for depletion.

The Commissioner made a calculation, according to the Bureau regulations, of the amount of the overpayment resulting from the failure to take adequate deductions. Plaintiffs contend that the method used by the Commissioner in so determining the amount of the overpayment is purely theoretical, and insist that plaintiffs' taxes could not, in the first instance, have been properly computed in such manner. It may be conceded that, if the Commissioner had been able to compute the taxes for 1917, in the first instance, upon the facts as now known to exist, the computation would not be made in the manner shown in finding 14, for, if the correct amount invested was ascertainable, plaintiffs were not entitled to the benefit of the special assessment provisions which were used in computing the 1917 tax. But this is not material nor do we need to determine whether the method used to compute the overpayment gave exactly correct results. If we exclude the computation made by the Commissioner, we have no evidence before us as to the correct sum which constituted overpayment resulting from the failure to take proper deductions in 1917. The contention of the plaintiffs is that the Commissioner should have used the amount which he found to be invested capital for 1917 after the proper deductions were made and the value of the ore deposits redetermined. This contention seems to be based on the theory that no figure or sum was used as the amount of the invested capital in the original computation of the taxes for 1917, and, as the correct amount of the invested capital for 1917 has now been determined, this sum should be used, not only in computing the correct taxes of plaintiffs for 1917, but also the amount of overpayment thereon. This is manifestly incorrect. The plaintiffs asked to have the provisions of section 210 of the act of 1917 applied in determining the amount of their taxes for that year. The Commissioner complied with the request, so computed the taxes, and his conclusion to apply this section, and his determination of the taxes

thereunder was an exercise of his discretionary powers, and is not now subject to review. Williamsport Wire Rope Company v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985. The provisions of section 284 (c) of the Revenue Act of 1926, under which plaintiffs claim a refund, do not change the general manner of computing the tax under section 210 of the Revenue Act of 1917. They merely provide that, under certain circumstances, allowance shall be made for deductions that had not been taken. In computing the taxes under the provisions of this section, the Commissioner did not use the correct amount of invested capital, as subsequently ascertained, for the provisions of this section only apply where "the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital," but it was impossible to compute the excess profits taxes without the use of a certain sum as the amount of invested capital, for one of the main provisions of the excess profits tax depends on the percentage of the profits on the amount of invested capital. The Commissioner, in computing the 1917 tax, accordingly fixed and used a certain sum as the amount of invested capital. This sum, for want of a better term, we will call "constructive invested capital," and we assume that it was the best estimate that the Commissioner could make of the amount of invested capital at the time he applied the "special assessment" provision. If, in computing the amount of change in plaintiffs' taxes for 1917 resulting from the failure to take proper deductions, a change was made in the amount of invested capital to make it accord with the increase in value of the ore deposits, or for any other reason, the overpayment would then be determined, not by the results of the failure to take the proper deductions, but by what resulted from changes made in the invested capital which resulted from other causes.

In order to determine accurately the amount of the difference in plaintiffs' taxes caused by reason of the failure of the plaintiffs to take certain deductions, the computation must be made in accordance with section 210 of the 1917 act, allowing plaintiffs the amount of the deductions which they should take, and using the same figures for the constructive invested capital as the Commissioner used. In other words, the computation must be made in the same manner in which the Commissioner would have made it, had he known of these deductions at the time he originally computed the tax. But this we cannot do, as the agreed facts do not show the amount

of this constructive invested capital. It would seem that evidence on this point could have been obtained, but we assume that it was not furnished by plaintiffs because, under the theory of their counsel, the sum used by the Commissioner as the amount of invested capital in making his original calculations is immaterial.

The contentions made on the part of the plaintiffs show, as we think, a misunderstanding of the statute. Three matters are required to be established by the provision under consideration. These matters appear quite plainly from the statute, but the misapprehension arises from the fact that they are often applied to the wrong year. They are:

First, a decrease in the invested capital of the taxpayer. This, however, applies to the subsequent year, not to the year for which the taxpayer may recover an overpayment.

Second, that such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years. Here again the "decrease" is the decrease in subsequent years which must be due to the failure to take "adequate deductions in previous years."

Third, the above matters having been shown, it must further appear that the result is that there has been an overpayment of income or profits taxes in the previous years.

It seems to be thought that, if the taxpayer failed to take adequate deductions in previous years, this is sufficient to entitle it to recover for any overpayment resulting therefrom. This is an error, for such a state of facts will not entitle the taxpayer to recover unless by reason thereof the invested capital of the taxpayer is reduced in a subsequent year, and, if the invested capital is reduced, even then only to the extent that an overpayment is caused by the failure to take such reductions. Or, in other words, as stated in the statute, unless "the invested capital of a taxpayer is decreased by the commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years," and even then it must further appear that this has resulted in an overpayment of income or profits taxes in the previous year, and the extent thereof must be shown.

After having applied the two provisions of the statute first mentioned above, we find that the outstanding defect in plaintiffs' case arises in connection with the third requirement, as we shall see upon a further consideration of the facts of the case.

The Commissioner, in 1919, increased the

unit value of the ore deposits. This undoubtedly entitled the plaintiffs to additional deductions for depletion in 1917, and these reductions would be reflected in a decrease of invested capital for 1919, but only to the extent of the amount thereof; and for and on account of the failure to take these deductions the Commissioner reduced the taxes of plaintiffs for 1917. As this amount which was allowed by the Commissioner did not cover the whole of the overpayment, it is assumed on the part of the plaintiffs that the overpayment resulted entirely from the failure to obtain the proper deductions. This is manifestly an error for the following reasons:

The failure to take proper deductions in 1917 on account of the increase made by the Commissioner in the unit value of the ore deposits did, as we have stated above, decrease to a certain extent the invested capital for the following years, and caused the plaintiffs to make an overpayment for 1917. But the overpayment for 1917 was not caused entirely, nor as we think even principally, by this failure to get the proper deductions. While an overpayment was caused thereby, the same matter that gave rise to it also gave rise to an overpayment in another manner. If plaintiffs had been allowed the value which the Commissioner subsequently fixed upon their ore deposits, the result would have been to greatly increase the amount of their invested capital; and, if their invested capital had been increased in accordance with this value, the result would have been to have lowered their excess profits tax, as that tax was based on the relative percentage of their profits to invested capital. This explains how it is that plaintiffs are claiming the right to have a total refund (including what has been refunded before) of taxes in the sum of $730,193.16, by reason of the failure to take deduction for depletion in the sum of only $691,806.80. Plaintiffs make this claim because they are now seeking to recover, not only the overpayment of taxes resulting from the failure to take proper depletion, but also the overpayment of taxes resulting from a failure to obtain proper adjustment of their invested capital in accordance with the value of their ore reserves. It may be said that, conceding this to be a fact, it nevertheless remains that plaintiffs have overpaid the taxes of 1917 in a greater sum than they have yet received. This may be conceded, but the plaintiffs sue under a special provision of the statute which allows them to recover notwithstanding the statute of limitations, if certain facts have been shown. If these facts have not been shown, there can be no recovery, and in no

event can plaintiffs recover beyond the amount of overpayment resulting from the failure to allow adequate deductions for depletion. See Southwestern Oil & Gas Co. v. United States (D. C.) 29 F.(2d) 404. We think, as was said in the same case on further consideration by the Circuit Court of Appeals, 34 F.(2d) 446, that to sustain the contention of the plaintiffs we would have to read into the statute upon which plaintiffs base their case a provision which would enable the plaintiffs not merely to recover overpayments resulting from any of the matters required to be shown by section 284 (e), but any overpayment for the previous year or years. This is not the law. The statute of limitations applies to any overpayment caused by matters not specified in said section 284 (e).

It should be observed also in this connection that there is no evidence by which we can determine how much of the overpayment was caused by the increased value given to the ore deposits, and, as stated above, there can be no recovery under the law for an overpayment so caused.

If we concede, for the sake of the argument, that the method used by the Commissioner in calculating the overpayment is wrong, there is then no way of determining whether it gave the plaintiffs too much or too little. There is no testimony upon which we can make a segregation of the amount of overpayment resulting from a failure to receive proper deductions for depletion in 1917 and the amount thereof which resulted from the failure to make the proper adjustment of invested capital for that year. The Commissioner made the plaintiffs an allowance which he considered was all to which the plaintiffs were entitled under the statute, and there is nothing to show that the plaintiffs are entitled to anything more.

There is also another reason, as we think, why plaintiffs cannot recover. It will be observed that what plaintiffs seek now is to have their taxes recomputed without any regard to section 210 of the act of 1917, although they had heretofore requested that their taxes be computed thereunder. We do not think that the plaintiffs, after having originally requested that the section last named above be applied and having their taxes computed in accordance therewith, can now say that they prefer to have their taxes computed in some other way which would reduce them. It will be noted that, even if plaintiffs had filed a claim for refund, they could not have the decision given by the Commissioner when he

was acting under the provisions of section 210 reviewed by this court, although the Commissioner could of his own volition correct any mistakes or errors that occurred in computing the taxes under this section. He did make a recomputation and a refund, and, while we have no way of estimating it exactly, it would seem that plaintiffs were granted as much as they were entitled under the provision by virtue of which the suit is brought.

The petition of the plaintiffs must be dismissed, and it is so ordered.

WHALEY and WILLIAMS, Judges, concur.

LITTLETON, Judge (concurring).

The defendant's computation gives the plaintiffs the refund of all the overpayment to which they are entitled under section 284 (c). The Commissioner's method of computing the amount of overpayment refundable may not be mathematically perfect, but when, as in this case, various factors of computation and various profits tax rates are applicable, it is clear that the result of his computation is more nearly correct than any that we can work out or that has been suggested by the plaintiffs. The plaintiffs, while admitting that the only overpayment which they may recover is limited to the overpayment for 1917 resulting from their failure to receive the benefit of adequate deductions from income for depletion and depreciation, contend that the entire overpayment for 1917 of $730,196.16 was due to their failure to take or receive the benefit of adequate deductions for 1917, which deductions, when properly computed, operate to decrease invested capital in the subsequent year.

The argument in support of this claim is that plaintiffs' correct invested capital was determined for the first time when the Commissioner was called upon to refund the overpayment for 1917; that the previous determination and computation of the profits tax for 1917 under section 210 of the Revenue Act of 1917 (40 Stat. 307) must be ignored, because the provisions of that section limit its application to cases where the invested capital cannot be satisfactorily determined, and the plaintiffs' consolidated invested capital could be determined; that section 284 (c) of the Revenue Act of 1926 (26 USCA § 1065 (c) makes no mention of invested capital for "previous years"; and that there is only one "invested capital," and that is the correct invested capital; that therefore, in determining the amount of refund payable under section 284 (c), the correct invested capital for 1917 must be used, and the refund computed upon the correct percentage of excess profits tax to net income, instead of at a rate considerably lower than the rate at which the additional profits tax was paid.

It is further pointed out by plaintiffs that the Commissioner of Internal Revenue in 1919, when he determined and computed the profits tax in accordance with section 210 of the 1917 act and determined the additional tax of $1,625,442.77, which was paid, made only one change in the net income reported in the return, such change being a reduction in the depletion unit from $9.39141 to $2.80 per ton; that, if the depletion unit had not been reduced, the plaintiffs would have had the benefit of an invested capital of $36,217,521.20 shown on the return. This, the plaintiffs say, makes the entire overpayment determined by the defendants on April 29, 1927, by the use of the correct invested capital of $16,605,060.92 and correct net income of $4,384,445.36, refundable under section 284 (c).

The plaintiffs are in error in contending that the defendant's determination under section 210 of the Revenue Act of 1917 of the amount of profits tax computed upon such determination is immaterial to a determination of the amount of the overpayment refundable under section 284 (c). The provisions of section 210 are mandatory, if the Commissioner is unable satisfactorily to determine invested capital, and, if he concludes that he cannot determine invested capital, it is his duty to so compute the profits tax. This section is recognized in the revenue law as much as is section 207 of the 1917 act, and a tax computed thereunder is as legal and valid as a tax computed on invested capital determined under section 207. Section 284 (c), which was first enacted as a part of section 252 of the Revenue Act of 1921 (42 Stat. 268), does not mention invested capital for the previous year or years, nor does it mention any factor that might affect the correct tax liability for such previous year or years except those deductions from gross income which, when increased in order to determine the correct invested capital for a subsequent year, had the effect of reducing invested capital, and thereby increasing the profits tax for the year under consideration over what such taxes would be, if the deductions claimed and allowed in such previous year were permitted to stand. It is clear that the words "such overpayment" for the previous year refer to an overpayment measured by the inadequate deductions and nothing else, and that the words "with the result that there has been an overpayment" do not contemplate a de-

termination of statutory invested capital where it has not theretofore been determined or a redetermination of invested capital through the retroactive allowance of a paid-in surplus, or for any other reason, except as it may be affected by deductions from gross income. It is evident in this case that the determination of the correct invested capital for 1917 was the cause of a large portion of the overpayment which had been made as the result of the assessment of an additional tax based upon a computation of the excess profits tax under section 210. Any portion of the overpayment resulting from this is not now refundable.

The excess profits tax computed by the Commissioner in 1919 under section 210 and paid by plaintiff for 1917 was $1,506,169.87, and the correct profits tax computed in 1927 on the correct invested capital and correct net income was $795,816.87, a difference of $710,-353. The income tax determined by the Commissioner in 1919 on the net income computed without allowing adequate deductions for depletion and depreciation was $227,744.13, and the income tax determined in 1927 upon the correct net income, after allowing adequate deductions for depletion and depreciation and after adjusting the income on account of certain inventory items and a claimed deduction for royalties disallowed, resulting in a net decrease in income of $140,748.98, was $207,-903.97, a difference of $19,840.16. The income and profits tax determined and computed by the Commissioner of Internal Revenue under the provisions of section 210 of the Revenue Act of 1917 upon a consolidated net income of $4,525,194.34 determined, without allowing plaintiffs adequate deductions for depletion and depreciation, amounted to $1,733,914. This resulted in the payment of an additional tax of $1,625,442.77 in excess of that shown and paid on the returns. The total income and profits tax computed upon the same net income of $4,525,194.34, arrived at without the allowance of adequate deductions for depletion and depreciation, and increased to $5,106,112.26 by proper adjustments in respect of the opening and closing inventories for 1917, and the restoration to income of the amount claimed as a deduction on the returns as royalties, and upon the correct consolidated invested capital of $16,605,060.92, was $1,325,433.25. The correct income and profits tax for 1917, computed upon a correct consolidated net income of $4,384,445.36, arrived at by making all proper adjustments and allowing adequate deductions for depletion and depreciation and upon the correct invested capital for 1917 of $16,605,060.92,

is $1,003,720.84. It is clear, therefore, that the difference of $231,929.48 between the tax computed without the allowance of adequate deductions, but with all other proper and legal adjustments, and the tax computed upon the correct consolidated net income after the allowance of adequate deductions and upon the correct invested capital, is that portion of the overpayment for 1917 resulting from the failure of the plaintiffs to take or receive the benefit of adequate deductions for 1917.

The fact that, had the Commissioner of Internal Revenue in 1919 not reduced the value of the depletion unit below what it should have been, the plaintiffs would have received an adequate deduction for depletion in 1917, and would have had the benefit of a corresponding invested capital, and therefore would not have overpaid its tax, does not help the plaintiffs' case. Section 284 (c) does not contemplate or include within its terms any items affecting the tax which may have some necessary relation to the inadequate deductions. It is the deductions, the increase of which in a subsequent year results in a decrease of invested capital for the subsequent year, that mark the limit of the amount which may be refunded after the expiration of the statute of limitations, and no other items are included, however closely they may be connected or related to such deductions.