## UNITED STATES v. GUTZLER et al.
### No. 9038.

Circuit Court of Appeals, Ninth Circuit.

June 27, 1939.

James W. Morris, Asst. Atty. Gen., Sewall Key, Joseph M. Jones, and Carlton Fox, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal by the United States from a judgment of the district court awarding a refund of excess profits tax paid by the Trumble Refining Company, a dissolved corporation, for the tax year 1917. The case was tried by the district court, the jury having been waived, and the appeal allowed before the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, were adopted. The

facts are presented to us in a bill of exceptions.

The district court found, "That the correct tax liability of the Trumble Refining Company for the year 1917 is the sum of $3,389.19 and that the Trumble Refining Company overpaid its taxes for the year 1917 by the total sum of $16,341.68; that there is now due and owing to these plaintiffs for taxes thus overpaid for the year 1917 the total sum of $16,341.68, together with interest at the rate of 6% from the dates paid, $6,213.83 having been paid on May 22, 1923, together with interest of $1,646.36 or a total of $7,860.19, and the balance thereof, to wit $8,481.49 having been paid on June 14, 1918."

To the decision and judgment on this finding there are but two pertinent assignments of error. (A) That the taxpayer's claim for refund and the suit therefor are barred by the pertinent statutes of limitation, and (B) that an assessment of $18,235, made by the Commissioner under section 210 of the Revenue Act of October 3, 1917, c. 63, 40 Stat. 300, 307, hereafter called the Taxing Act, without the request of and under the taxpayer's protest, was within the authority of the Commissioner and is not reviewable by the courts. Unless one or both of these contentions be sustained, the judgment must be affirmed.

(A) On the question of the statutes of limitation, the district court found that by the Commissioner's reopening of a rejected claim and its consideration, an amended return and claim for refund were within the statutory time and should have been allowed.

The evidence supporting appropriate findings shows that in June, 1918, the taxpayer made its return computing its liability for 1917 to be $11,870.68 and paid that amount. In an assessment letter of February 21, 1920, the Commissioner proposed, on grounds later considered, to assess the 1917 tax under the special provisions of section 210 of the Taxing Act and computed an additional assessment for 1917 of $6,365, and on May 17, 1920, made the proposed assessment. On June 17, 1920, taxpayer filed an amended return, showing a deduction, because of the exhaustion by approaching termination of certain patent license contracts yielding its principal income for that and prior and subsequent years, which deduction had not been made in its original return, and disclosing a tax liability of but $2,120.88. In connection with the amended return, taxpayer sought abatement of the Commissioner's additional assessment of May 17, 1920, of $6,365.

On July 2, 1920, the taxpayer claimed a refund of the difference between the liability shown on its amended return and its 1918 payment, amounting to $9,749.80. The Commissioner caused an investigation of the amended return and claims for abatement and refund and, 17 months later, on December 13, 1921, advised the taxpayer that its claims for refund and abatement had been rejected, and on January 13, 1922 demanded payment of the additional assessment. On January 21, 1922, a second claim in abatement was filed. On the following February 1, the taxpayer filed a comprehensive brief and formal protest against the additional assessment for 1917, and presented facts showing taxpayer's claimed overpayment in June, 1918, on his original return. On December 9, 1922, taxpayer requested a hearing on the subject of taxpayer's 1917 and other years' taxes and was told that the decision on the 1917 taxes would be held in abeyance until the taxes for the other years were settled. The evidence shows these other years involved the identical question of the annual deduction for the expiration of the royalty contracts.

On January 19, 1923, the Commissioner requested the taxpayer's waiver of the statute of limitations governing the time within which additional assessments for the year 1917 could be made, which waiver, on February 1, 1923, the taxpayer gave the Commissioner.

Having procured the requested waiver, the Commissioner (instead of waiting for the determination of the taxes for the other years) in five days notified taxpayer he had redetermined its 1917 tax under the provisions of section 210 and had abated but $151.17 of the amount of the first additional assessment.

Taxpayer on February 23, 1923, called the Commissioner's attention to its brief and the agreement to defer the redetermination until the taxes for the other tax years had been determined, and asked the privilege of submitting additional data regarding the deduction for the expiration of the contracts. On May 15, 1923, taxpayer asked the Commissioner to instruct the Collector of Internal Revenue to withhold collection of the additional assessment for the 1917 tax and fix a day for a con-

ference regarding the taxes of the 1917 and other years under consideration. The Commissioner on May 21, 1923, replied that a conference could be arranged on the 1917 tax if a formal protest was filed by the taxpayer.

In May, 1924, taxpayer filed the suggested protest, submitted additional data on the claimed deduction and conferred with the Commissioner. In the interim, on May 22, 1923, the taxpayer had stopped the running of interest by paying, under protest, the additional assessment.

The negotiations regarding taxes for the other years, respectively 1918 and 1920 to '23, continued until adversely determined by the Commissioner. On appeal to the Board of Tax Appeals, the annual deduction for the expiration of the royalty contracts was, on November 19, 1928, held to be allowable and determined at $72,511.90 per annum, the sum which the court below allowed in determining the refund. On April 25, 1929, taxpayer filed its amended claim for refund for 1917, computed on the deduction allowed by the Board of Tax Appeals.

The response of the Commissioner is significant. In a letter of May 22, 1930, the claims for refund for the years up to 1917,—1913 to 1916 inclusive, and those after,—1919, 1920, 1922, and 1923, also were considered. The Commissioner refused to acquiesce in the deduction for 1917 or any other years except 1920, 1922, and 1923, which were decided by the Board of Tax Appeals. The letter then states that as to all the years from 1913 to 1919 inclusive, *except 1917,* claims for refund are barred by the statute of limitations. This was followed on July 25, 1930, by a formal rejection of the claim.

On August 5, 1930, taxpayer requested a reopening of the claim and on November 3, 1930, the Commissioner denied the request on the ground of his non-acquiescence in the Board's decision and, for the first time, made the added contention that the claim is barred by the statute.

This evidence we hold is sufficient to sustain the court's finding that the Commissioner reopened the case and that it was open and under consideration when the amended claim for refund finally was rejected on July 25, 1930, within two years of the filing of the instant suit. Cf. Pink v. United States, 2 Cir., 105 F.2d 183, decided May 22, 1939; Prentice-Hall Federal Tax Service for 1939, page 5.843.

(B) The next question is whether the Commissioner obtained the power to decline to assess under the general provisions of the Taxing Act and to assess under section 210 by satisfying the section's prerequisite, conditional to its use. This requires a consideration of the extraordinary situation for which the section was enacted. The other provisions of the Act provide for an assessment by precise formulae furnished by the Act itself. Section 210 provides:

"Sec. 210. *That if the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital,* the amount of the deduction shall be the sum of (1) an amount equal to the same proportion of the net income of the trade or business received during the taxable year as the proportion which the average deduction (determined in the same manner as provided in section two hundred and three, without including the $3,000 or $6,000 therein referred to) for the same calendar year of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, bears to the total net income of the trade or business received by such corporations, partnerships, and individuals, plus (2) in the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000.

"For the purpose of this section the proportion between the deduction and the net income in each trade or business shall be determined by the Commissioner of Internal Revenue in accordance with regulations prescribed by him, with the approval of the Secretary of the Treasury. In the case of a corporation or partnership which has fixed its own fiscal year, the proportion determined for the calendar year ending during such fiscal year shall be used." (Italics supplied.) Revenue Act of October 3, 1917, c. 63, 40 Stat. 300, 307.

The section thus clearly distinguishes the function of the Secretary of the Treasury and the Commissioner. On the one hand, the Secretary is to determine whether the section shall be applied and shall approve the regulations for determining the proportion between deduction and the net income of the representative corporations in the like or similar trade or business. On the other hand, *after the Secretary* has done these, the Commissioner makes the assessment.

The reason Congress had in mind is obvious. It is the possible abuse of the broad discretion in the determination of the imponderables of the section. That kind of discretion is so extraordinary that the Supreme Court has held it is not subject to the review of the courts.[1] It is a discretion similar to that which measures the imponderables in the settlement of a tax claim which Congress required to be approved by the Secretary,[2] and which approval the Supreme Court has held must be given by the Secretary.[3]

The treasury regulations construe section 210, as it obviously requires, as invocable by the act of the Secretary. Treasury Regulation 41, Article 24, provides:

"Art. 24. *When invested capital can not be satisfactorily determined.*—If the Secretary of the Treasury is unable satisfactorily to determine the invested capital, the deduction shall be the sum of—

\*  \*  \*  \*  \*  \*  \*."

The taxpayer's brief and argument raised the question of the failure of the Secretary, as distinguished from the Commissioner, to find that the invested capital could not be satisfactorily determined. At the trial below it was admitted by appellant to be *exactly* determinable at a March 1, 1913, valuation of $850,000, and was

twice so determined, once by the Board of Tax Appeals, before the reassessment here in dispute, and once by the district court. The appellant does not question the absence of the Secretary's action and at the hearing here and in its brief admitted that the special assessment provisions of section 210 were invoked by the action of the Commissioner, stating: "By letter dated February 21, 1920,[4] the Commissioner of Internal Revenue proposed additional taxes against the Trumble Refining Company for the year 1917 in the sum of $6,365; \* \* \* a large part of the Trumble Refining Company's invested capital could not be included under the statutory requirements for tax purposes and therefore he had computed the tax under the provisions of Section 210 of the Revenue Act of 1917."

This question has not been determined by the Supreme Court, nor discussed, save in a casual dictum in United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 271, 51 S.Ct. 376, 75 L.Ed. 1025, that the duty is on the Secretary, and in another in United States v. Factors & Finance Co., 288 U.S. 89, 96, 53 S.Ct. 287, 77 L.Ed. 633, that the Commissioner himself may invoke the section. In the latter case the taxpayer itself proposed that the Commissioner should invoke section 210 and de-

---

[1] Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 562, 48 S.Ct. 587, 72 L.Ed. 985.

[2] Section 3229 of the Revised Statutes.

[3] Botany Worsted Mills v. United States, 278 U.S. 282, 288, 49 S.Ct. 129, 73 L.Ed. 379. Cf. Ventura Consol. Oil Fields v. Rogan, 9 Cir., 86 F.2d 149, 152.

[4] The pertinent parts of the letter, upon which its above construction was submitted for the hearing of the appeal, are:

"February 21, 1920.

"Trumble Refining Company, Higgins Building, Los Angeles, California.

"Sirs: Reference is made to your income and excess profits tax returns for the year ended December 31, 1917, which were originally filed and the tax computed as prescribed in Section 209 of the Act of October 3, 1917. You are advised that after careful consideration of the facts as set forth in your statements filed with the returns together with other data submitted, it is the opinion of this Bureau that your business is of such a character as normally to require a substantial capital investment and the income is attributable to the employment of capital. Therefore, the assessment under the provisions of Section 209 of the Act of October 3, 1917, has been disallowed.

"However, it has been found that, owing to the fact that a large part of the invested capital cannot be included under the statutory requirements for tax purposes, your case has been given consideration under the provisions of Section 210 of the same Act and Articles 18, 24 and 52 of Regulations 41, which provide that an excess profits tax may be based on a comparison with a group of concerns engaged in a like or similar line of business which in their general character are comparable as to the several component parts influencing the tax liability to your company. [Here follows computation of tax under section 210.]

\*  \*  \*  \*  \*  \*

"You will be advised by the Internal Revenue Collector for your district as to the time and manner of payment of the above additional tax.

"Respectfully,
"(signed) G. V. Newton,
"Acting Assistant to the Commissioner."

termine the tax under its provisions and he did so determine it. Taxpayer's appeal in that case was not on the ground that the Commissioner did not have the power to invoke the section and that the Secretary alone could exercise it, but that after the Commissioner had by computation under section 210 determined there was an overpayment, he took the position that taxpayer's notice of claim in part was not timely. The taxpayer having itself invoked section 210 by seeking an assessment under its terms, it was estopped to make the contention as to the want of action by the Secretary. In any event the question was not raised or passed on. Neither the Supreme Court nor this court is bound as to questions which may possibly lurk in the record.

"Counsel for appellant directs our attention to other cases, where this court proceeded to determine the merits notwithstanding the suits were brought against inferior or subordinate officials without joining the superior. We do not stop to inquire whether all or any of them can be differentiated from the case now under consideration, since in none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if any one had seen fit to raise it. *Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.* See New v. Oklahoma, 195 U.S. 252, 256, 25 S.Ct. 68, 49 L.Ed. 182; Tefft, Weller & Co. v. Munsuri, 222 U.S. 114, 119, 32 S.Ct. 67, 56 L.Ed. 118; United States v. More, 3 Cranch, 159, 172, 2 L.Ed. 397; The Edward, 1 Wheat. 261, 275, 276, 4 L. Ed. 86. * * *". (Italics supplied.) Webster v. Fall, 266 U.S. 507, 511, 45 S. Ct. 148, 149, 69 L.Ed. 411.[5]

Congress, in two other sections, 203(d) and 205 of the Taxing Act, made the ac-

tion of the Secretary a prerequisite to the power of the Commissioner to assess.

■ It is significant that in the Revenue Act of 1918 the function of determining whether the special assessment of section 210 of the 1917 Act may be invoked is taken from the Secretary and given to the Commissioner. Revenue Act of 1918, Section 327(a), 40 Stat. 1093. Apparently experience had shown either that the Secretary's act was unnecessary or that the administrative burden on him had proved too arduous. Cases construing this analogous section of the 1918 Act throw no light on the present problem.

We are unable to see any more reason here why the Commissioner should be deemed to have the Secretary's discretion in invoking the exceptional taxing powers of section 210, than that the exercise of the Commissioner's discretion in closing a settlement of a disputed tax should be deemed to be the Secretary's approval of his action. In each of the applicable statutory provisions the separate functions of the two officers have a logical reason for their division between them. We therefore hold that, in the absence of a decision by the Secretary that he could not satisfactorily determine the invested capital, the Commissioner did not have the power to assess taxpayer's income and excess profits under section 210 of the Taxing Act.

The special character of the section makes particularly applicable the principle stated with respect to the difference of the function of Secretary and Commissioner in Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379, "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Raleigh, etc., R. R. Co. v. Reid, 13 Wall. 269, 270 [note] 20 L.Ed. 570; Scott v. Ford, 52 Or. 288, 296, 97 P. 99.

---

[5] In Roby-Somers Coal Co. v. Routzahn, 6 Cir., 100 F.2d 228, 230, the court misstates section 210 as providing that "if the Commissioner was unable 'satisfactorily to determine the invested capital'" he might assess under that section, although in a footnote the exact wording of the statute is given. This mistaken premise is made the basis of the opinion. In that and the following cases the taxpayer sought the application of section 210 and neither party made, nor did the courts consider, the contention that the Secretary and not the Commissioner had the power to determine whether it should be applied. Maas & Waldstein Co. v. United States, Ct.Cl., 37 F. 2d 196, 199; affirmed, 283 U.S. 583, 51 S.Ct. 606, 75 L.Ed. 1285; McDonnell v. United States, Ct.Cl., 59 F.2d 290, 292, 293, affirmed, 288 U.S. 420, 53 S.Ct. 410, 77 L.Ed. 869; Freeport Texas Co. v. United States, Ct.Cl., 58 F.2d 473, 479; certiorari denied, 287 U.S. 660, 53 S.Ct. 122, 77 L.Ed. 569.

"It is plain that no compromise is authorized by this statute which is not assented to by the Secretary of the Treasury. * * *"

The taxpayer further contends that the record affirmatively shows that there existed no dissatisfaction as to the computation of the invested capital in the mind of the Commissioner.

We have seen that the appellant admitted below that the invested capital was exactly determinable; that it was determined below; that with the figure before it the court determined the tax liability to be $3,389.19, and by not assigning error to this amount it is admitted to be the amount due if the tax had been assessed under the general provisions of the Act.

We have also seen that not only did the taxpayer not invoke section 210, but protested against the Commissioner's invoking it prior to his final reassessment of the tax. We have seen that by the Commissioner's ignoring of the exact invested capital and computing the tax under the protested section 210, he has assessed a tax of $18,235, being some $15,000 higher than the taxpayer would have been assessed if the Commissioner had not so attempted to enhance the federal income.

We do not believe this is a situation parallel to that in Helvering v. Mountain Producers Corp., 303 U.S. 376, 384, 58 S. Ct. 623, 626, 82 L.Ed. 907, where the federal power of taxation is considered "in the light of the expanding needs of state and nation". What has been done here is clearly an arbitrary act.

Assuming the Commissioner has the power specifically given to the Secretary, we consider whether he did determine that he was unable satisfactorily to determine the invested capital. The position of the government taken here and in its brief is that he formed an "opinion" that "a large part of the Trumble Refining Company's invested capital could not be included under the statutory requirements for tax purposes and that therefore he had computed the tax under the provisions of Section 210 of the Revenue Act of 1917."

In our opinion the fact that the statute did not permit the inclusion of items of invested capital and that, as here, if they be included taxpayer will pay a larger tax, is not the basis of the dissatisfaction contemplated by the Act. If the invocation of the special section had been made by one having authority to invoke it, without giving any finding, it would be held valid, Cf. Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 559, 48 S.Ct. 587, 72 L.Ed. 985, upon either the theory that proper exercise of an official function will be presumed or that the burden is the taxpayer's to prove absence of the statutory requirement of dissatisfaction. However, where, as here, the finding of the Commissioner relied on by appellant shows it does not satisfy the statute, we hold that it has not been invoked validly by the Commissioner's action, even assuming the Commissioner had the power to invoke it. Cf. Perkins v. Elg, May 29, 1939, 59 S.Ct. 884, 896, 83 L.Ed. ——.

Affirmed.

HEALY, Circuit Judge (concurring).

I agree that the evidence sustains the finding that the Commissioner reopened the case and that it remained open for consideration when the amended claim for refund was ultimately rejected; and therefore that the taxpayer's claim is not barred by limitation.

I think it is unnecessary to consider or decide the second question dealt with in the opinion. The taxpayer's true net income is undoubtedly an essential factor in the determination of his liability under an assessment made pursuant to section 210 of the 1917 act. Welch v. Obispo Oil Co., 301 U.S. 190, 196, 57 S.Ct. 684, 81 L.Ed. 1033; Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921. It is substantially shown that the Commissioner made no final determination of this essential factor. The matter remained in abeyance and there never has been a final determination by the Commissioner of true net income. This being so, there is no merit in the Commissioner's second defense.