RENLAND, Appellant, *v.* FIRST NATIONAL BANK OF GRASS RANGE et al., Respondents.

(No. 6,776.)

(Submitted September 16, 1931. Decided October 15, 1931.)

[4 Pac. (2d) 488.]

*Mr. Ralph J. Anderson* and *Mr. Wm. M. Blackford,* for Appellant, submitted a brief; *Mr. Anderson* argued the cause orally.

*Messrs. Belden & De Kalb* and *Messrs. Ayers & Ayers,* for Respondents, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted to recover from the defendants the excess of moneys collected by the defendants over and above the reasonable value of their services in presenting and collecting from the administrator of the estate of John J. McDonnell, deceased, upon a promissory note, the sum of $4,433.33; it being alleged in the plaintiff's complaint that the defendants, on January 14, 1929, deposited to plaintiff's account only the sum of $3,363.75, and retained for their services the sum of $1,236.25, without reasonable cause or excuse, and that while the defendants are entitled to a reasonable amount for services by them rendered in making such collection, they are not entitled to any more, and that the sum of $50 would be a fair charge for the services so rendered. Judgment was prayed for the sum of $1,236.25, less the sum of $50 to be deducted as a reasonable charge for such services, with interest from January 14, 1929, and costs of suit. By answer, the defendants denied any indebtedness to the plaintiff and affirmatively alleged that the plaintiff requested the defendants to present his claim on the note to the administrator of the estate, and not being experienced in such matters, they delivered the note to Roy E. Ayers, a licensed and qualified attorney, for collection, advised the plaintiff thereof, and received the plaintiff's approval, and that Ayers undertook and agreed to collect the note for the sum of $75, plus twenty-five per cent. of the amount collected, and so advised the plaintiff; in consequence the deduction after the indebtedness had been paid. Issue was joined by reply denying the material allegations of the defendants' affirmative defense. The cause was regularly tried to a jury, which rendered verdict in favor of the defendants. A motion for a new trial

was made and denied. Judgment was duly entered upon the verdict, from which the plaintiff has appealed.

The plaintiff's several assignments of error raise no question as to the sufficiency of the pleadings or of the evidence, the only matters presented being as to the admissibility of certain evidence and the propriety of certain instructions to the jury given and refused by the trial court. The determinative question in disposition of this appeal presented by the plaintiff's assignments of error is whether positive testimony of non-receipt of a letter properly addressed, stamped, and posted in the United States mail so overcomes the presumption of its delivery that the jury may not take such assumption of law into consideration in resolving the weight and effect to be given to evidence on the subject.

From the evidence it appears that the plaintiff was doing his banking business with the defendant bank; that he owned a promissory note executed to him by one Jack McDonnell for the sum of $4,000, interest bearing at the rate of seven per cent. per annum, dated May 16, 1920, and payable one year after date. Payments on the note were made down to July 1, 1927. Needing some money, or for other reason not clear, some years before July 1, 1927, the plaintiff indorsed the note "pay to no one else except Jack McDonnell" and delivered the note into McDonnell's possession; however, interest was subsequently paid and indorsed upon the note.

Some time prior to July 9, 1927, the plaintiff asked the advice of the defendant Miles, president of the bank, respecting the note then in Jack McDonnell's possession, as the plaintiff was worried about the indebtedness, and Miles advised the plaintiff by letter of date July 9, 1927, as follows: "It is rather unusual for a party to have in his possession a note he owes as he could easily destroy the note or claim it was paid and if you could not produce the note you would have no defense. As this note involves $4000.00 it seems to me I would get this fixed up at once if I had to make a trip to Lewistown to get possession of it. Is the note past due? If it is it cannot be transferred to a third party, the proper

thing to do if it is would be to get a renewal or get the original note and bring suit on it yourself. In any event I would spend the time to get it in shape, or something in my possession to show that McDonnell is indebted to you. Will be pleased to help you in any way we can. If the note is not past due and you can get it I think I can then assist you.''

On November 28, 1927, the plaintiff wrote the defendant bank as follows: ''Jack McDonnell of Lewistown returned that $4000.00 note. Am afraid the shack might catch fire and burn the note. If I now lose the note, I am afraid it would be and end of it; as he got sore for I wanting to keep the note. Would the Bank hold the note so it would not be destroyed by fire?''

On November 29, 1927, the defendant Miles replied by letter advising the plaintiff that if he would mail the note to the defendant bank it would gladly safely keep it.

Shortly afterwards the plaintiff sent the note to the defendant bank. On January 28, 1928, the plaintiff wrote to the bank stating that he noticed by the papers that Jack McDonnell was dead and that he was glad that he had obtained possession of the note in time. On March 13, 1928, the plaintiff wrote to the bank making inquiry as to the length of time required to settle the estate of a deceased person, and stated therein that he had written to the deceased's brother Ed., who turned the letter over to lawyer Hopkins, who replied to it, stating that he would send a blank form of claim against the estate for the plaintiff to fill out, but that six weeks had since elapsed without any further word from Hopkins—''could you please give me advice it is hard for me to get to town.'' On March 26, 1928, the plaintiff made acknowledgment by letter addressed to the bank, of receipt of a claim against the estate to be executed and presented to the administrator. On April 14, 1928, the plaintiff wrote the bank stating: ''It was a good thing to get some one to look after the McDonnell claim, especially when one knows that gang, and what they have done before. I realize it was

bad business; what I wrote on the note. \* \* \* Am returning the claim, if you will please continue to look after it.''

The plaintiff acknowledged receipt of a letter dated April 6, 1928, from Miles, wherein it is stated: ''I enclose herewith receipt from the attorney of the John J. McDonald estate for the claim which I presented for you in the $4000.00 note. I turned this matter over to Ayers & Polutnik of Lewistown. The endorsement which you made on the back of the note, endorsing it back to McDonald was a very serious mistake; however, we will try to get the claim through in full, but I figured it was better to turn this over to an attorney living at Lewistown, who could look after it. There may be some little expense to it, but you had better be to some expense than lose the entire claim.'' And on cross-examination the plaintiff denied having received Defendant's Exhibits No. 9 and No. 10, the former being a letter written by attorney Roy E. Ayers of Lewistown, dated August 5, 1928, and the latter a copy of a letter to Mr. Miles inclosed, stating the conditions under which Ayers would handle the matter as attorney. In defense these exhibits were admitted in evidence upon the testimony of Ayers that he had written such letters which were on the day they were written inclosed in an envelope addressed ''to T. B. O. Renland at Cat Creek, Montana, with the proper postage placed upon the envelope, with my return on the corner of the envelope, and on that same day was mailed in the United States Post Office at Lewistown, Montana.'' They were never returned to the writer.

Defendant's Exhibit No. 9 is a letter advising the plaintiff that his claim against the McDonnell estate had been placed in his (Ayers') hands for collection ''by Mr. Miles of the First National Bank of Grass Range.'' Further, Ayers stated in the letter: ''The writer was not in the office when Mr. Miles called, but I have talked with him by phone and have made an investigation in the matter and wrote him today, copy of which letter is herewith enclosed. Please give me such additional information as you have, and complete explanation of that indorsement and the real estate matter.''

Exhibit No. 10 reads as follows:

"Roy E. Ayers
"Attorney and Counselor at Law
"Suite 414–415 Bank-Electric Building
"Lewistown, Montana.

"April 5, 1928.

"Mr. Frank F. Miles,
    "Grass Range, Montana.
"My dear Mr. Miles:

"I am sorry that I did not get to see you when you were here last week. From what I have learned about the Renland claim against the McDonnell estate and from what you told Mr. Polutnik when here and what you told me by phone, I conclude that it is a doubtful claim and I am not anxious to prosecute it on a contingent fee. Really it is one of those cases where a man can do a lot of work and in the end have nothing that he can cash in for money.

"I have spent some time on the history of this claim and it seems that a real estate deal is at the bottom of it and woven through it. Some time prior to McDonnell giving Renland this note for $4000.00, Renland had agreed to buy a piece of land here in Lewistown from McDonnell and had advanced that sum of money on it, but at that time McDonnell was not in a position to deed the land, so the note was later made to evidence the advancement. The deal was not completed and the land depreciated in value and Renland then insisted on calling it a loan; McDonnell was then able to deed and convey the land and he insisted on calling it a deal; in their negotiations in this connection, and after McDonnell had made some interest payments and in order to get some further payment, Renland surrendered the note to McDonnell and actually indorsed it to him, which would indicate that it was wiped out at that time; and I also have learned that McDonnell at that time attempted to deed and convey the land to Renland, and that his claim always was the note was to be paid by deeding the land, which now does not have much

value, and that the only reason he ever paid any interest was because he had had the use of the land during the time he paid interest.

"Now with this state of facts or any similar state of facts involving these subjects it would be quite some job to collect on such a claim against an estate. The physical facts put a stamp of truth on the history of the transaction. Hence in the prosecution of this claim we would be carrying a treble burden, when one is enough. First, we would have to establish the bona fides of the note and show that a loan was in fact made; second, we would have to eliminate the real estate deal, which would probably involve a real estate law suit so far as work and briefing would be concerned; then third, and probably the most difficult of all will be the question, 'why the surrender and endorsement of the note?' Then there is always the question of the solvency of the estate. A person might hurdle all these obstacles and then in the end get a valueless judgment, for I do know there will be quite a large total of claims against this estate, and at present prices the real estate will not sell for its real value.

"If I do not have the history of this transaction as it really exists or as we are likely to be confronted with, please correct me, and also furnish me with whatever else you may have. I am sending a copy of this letter to Mr. Renland at Cat Creek."

The witness Ayers testified: "At that time the only address I knew of Mr. Renland was Cat Creek, Montana. The record now shows by letters admitted in evidence, written by Mr. Renland himself, that he got letters from Mr. Miles which had been addressed to Cat Creek."

Defendant's Exhibit No. 17, admitted over plaintiff's objection, is a copy of a letter which was dictated by Roy E. Ayers, and was "enclosed in an envelope, sealed, carrying the proper postage," with a return card on the corner of the envelope, "directed * * * to T. B. O. Renland, at Cat Creek, Montana, and there is a mail connection between Lewistown and

Winnett by rail, and between Winnett and Cat Creek by other conveyances, and a post office at Cat Creek and at Lewistown." It was never returned to the writer. In rebuttal the plaintiff positively denied receipt of such a letter. It reads as follows:

"September 3, 1928.

"Mr. T. B. O. Renland,

"Cat Creek, Montana.

"My dear Sir:

"I have yours of August 29 in reference correspondence with Jack McDonnell. I had gathered from your letters at the bank or from talk I have had with some of the various persons on this claim, that you had some letters from Mr. McDonnell on the subject of your endorsement of this note back to him, but since you do not have any such letters, I wish you would write me the details of this matter.

"I was out of my office from June first to July 17th, and Mr. Polutnik who took care of the office during that time is not with me now. In looking over the files in your case I fail to find any information from you on the subjects of my letter of April 5th, written to Frank F. Miles who brought this case to the office, copy of which letter was sent to you; however, Mr. Miles has given me all the information he has, which, however, would not be proof. From all this I get your idea of the endorsement and surrender of the note back to Mr. McDonnell, but nowhere can I find a real reason for you making this endorsement and surrendering this note back to the maker, when in fact you claim the note was never paid nor canceled. Now what I am anxious to know is just what will be your testimony on this subject. Give me the real reason, be it good or bad. I should know in order to properly represent you. Also I want the facts about the real estate deal.

"Be referred to my letter of April 5th, above mentioned, with reference to contingent fees in this matter. There I outlined the difficulties of this claim, and since Mr. Miles sug-

gested I prosecute it on a contingent basis, and since I have not heard from you on the subject I conclude that is the way you desire it handled. I will prosecute this claim on a minimum of $75.00 plus 25% of the amount recovered; this is providing I can get a settlement of the claim or make a recovery in the District Court; then if we lose in the District Court and it appears to be a proper case for appeal to the Supreme Court, I will prosecute it through the Supreme Court for an additional 10%. In all instances I am to get nothing unless I make a recovery.

"I think this is a fair proposition under the state of facts in this case. Usually such cases are taken on a contingent basis of from one third to one half.

"Write me at once and give me the information I am asking, and if the proposition with reference to the contingency is not satisfactory you will please let me know and we can make some arrangement on a flat fee, win, lose or draw, or you can pay me for what I have done and then employ someone else to prosecute this case."

In a letter addressed to the plaintiff by Ayers, dated October 15, 1928, it is said: "Please be referred to my letter of April 5, addressed to Mr. Miles and copy sent to you, also my letter of September 3, addressed to you, and give me in detail the information I ask." Like testimony was given respecting the mailing of the original of this letter at Lewistown on the day it was written. In rebuttal the plaintiff denied having received it. Defendant's Exhibits No. 22 and No. 23 are copies of letters written by the witness Ayers, the former being addressed to the plaintiff at Cat Creek on December 8, 1928, and the latter being a copy of a letter of even date addressed to Mr. Miles which was inclosed with the letter to the plaintiff. Similar testimony was given as to posting on the day they were written in the United States Post Office at Lewistown. On rebuttal the plaintiff denied having received them. They read as follows:

Exhibit 22.

"December 8, 1928.

"Mr. T. B. O. Renland,

"Cat Creek, Montana.

"My dear Sir:

"Reference is again had to your claim against the McDonnell estate and I have again this day written Mr. Miles copy of which letter is herewith enclosed and is self-explanatory. The pro rata proposition is entirely out of the way now, and the signature I am sure will be found to be genuine, but I don't know what consideration will be given the real estate deal and the endorsement by the administrator. However, you are misjudging the McDonnells in your letters. I have known them all my life and I know that they and especially Ed McDonnell the administrator are high class people, and unless there is a real defense to this claim he will approve it, but I should have the information requested so as to convince him."

Exhibit No. 23.

"December 8, 1928.

"Mr. Frank F. Miles,

"Grass Range, Montana.

"Dear Frank:

"I had another conference with Mr. Hopkins and I am feeling better about the Renland case. Mr. Hopkins advises that Ed McDonnell has declared that he will, out of his own pocket, make up all shortages on all proper claims against the Jack McDonnell estate, and that he will take the property to protect himself in this respect; hence the pro rata proposition about which I wrote you a few days ago is off, but it would have only amounted to a small amount anyway, and if necessary in order to effect a settlement I would have stood it out of my contingency.

"On the third I delivered the note to Mr. Hopkins for examination by him and the administrator and today he doesn't seem to be so agreeable about allowing the claim as he was before. That darned endorsement is the hurdle I have

always been afraid of and I have no real defense to it. I am now afraid the claim will be disallowed and I will have to bring suit within thirty days thereafter, and will have to plead that endorsement out of the way. I don't understand why Renland does not give me some help on this point. I would not blame the administrator if, under the present circumstances, he disallowed the claim. I presume Renland is just trusting to luck in the matter, and that is all I can do too under the present conditions; However, if I had a feasible explanation I think I would have a check in a few days.

"I am sending a signed copy of this letter to Mr. Renland.

"Yours very truly,

"Roy E. Ayers.

"REA/T

"Frank—I sent the original to Renland."

The court instructed the jury, and in our opinion correctly: That "for a principal to ratify any act of his agent, the principal must accept the results of the act with an intent to ratify, and with full knowledge of all the material circumstances. Such ratification may be had by word, act or omission, and ratification may be had by intentionally accepting the result of the acts of his agent. But you are further instructed that knowledge on the part of the principal that his agent has employed a sub-agent, or his mere omission to dissent, therefrom, standing alone, is not sufficient knowledge of the material circumstances surrounding the acts of the agent, to warrant you in finding that the principal ratified the acts of his agent in appointing a sub-agent." That ratification as herein defined, "of any contract, may be inferred from evidence that a person after full information made no objection within a reasonable time, when a reasonable person under similar circumstances would have objected. Intentional omission to reply may raise an inference of approval of a past course or state of facts made known to and understood by the person failing to reply, when under the circumstances ordinary men would and should make a reply."

Plaintiff's offered Instructions Nos. 25 and 26, refused by the court, do not correctly state the law respecting the presumption that a letter duly directed and mailed was received by the addressee in the regular course of the mail; and the court's modified Instruction No. 11, given over the plaintiff's objection, was altogether too favorable to him. He should not now be heard to complain. His objection thereto is without merit, as it was based solely upon the ground that "it submits to the jury the question as a question of fact, whether or not the letters written by Ayers, and which he testified were mailed in due course of the mail, properly addressed and stamped, [were received by the person to whom they were addressed] the presumption arising therefrom having been entirely overcome and destroyed by virtue of the positive denial of the receipt of each and all of said letters by the plaintiff, Renland, there being no other evidence whatsoever or at all in the record relative to the receipt of the letters written by Ayers to Renland."

"A presumption is a deduction which the law expressly directs to be made from particular facts." (Sec. 10602, Rev. Codes 1921.) Among the disputable presumptions enumerated by our statute is "that a letter duly directed and mailed was received in the regular course of the mail" (subd. 24, sec. 10606, Rev. Codes 1921; *McAuley* v. *Casualty Co.*, 39 Mont. 185, 102 Pac. 586; *Stewart* v. *Arrow Creek Dev. Co.*, 66 Mont. 238, 212 Pac. 1107), which is satisfactory proof if uncontradicted. The presumption that a letter properly mailed was received by the addressee is not conclusive, the statute so declares. It may be rebutted by evidence showing that the letter was not in fact received. Whether the evidence is sufficient to rebut such presumption is a matter for the jury's determination, except where the facts proven are so overwhelmingly against the presumed fact as to permit of but one reasonable and rational conclusion. (*Nichols* v. *New York Life Ins. Co.*, 88 Mont. 132, 292 Pac. 253.) It was for the jury to resolve from all of the evidence whether the letter was prop-

erly posted, and, if so, whether it was by the plaintiff received; and if the jury found that it was not mailed or received by the plaintiff, then it could not be considered for any purpose. The presumption is not overcome, but a question of fact is presented for the jury's determination.

In 22 C. J., page 102, it is said: "It has been held that evidence of nonreceipt of mail matter, even though it consists of the addressee's positive denial of receipt, does not nullify the presumption, but leaves the question for the determination of the jury under the circumstances, with such weight given to the presumption as they think it entitled to, the burden of proving receipt remaining throughout upon the party who asserts it; but on the other hand there are authorities which have asserted that the addressee's positive denial of the receipt of mail matter renders of little weight or even entirely overcomes the presumption of receipt, and raises a presumption that the letter was never posted. Testimony of the addressee that the letter was not received should be regarded with caution, especially where nonreceipt, if proved, would relieve him of a burden."

The judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Ford, Angstman and Matthews concur.

Rehearing denied October 30, 1931.