## NEW YORK LIFE INS. CO. v. GAMER.
### No. 8124.

Circuit Court of Appeals, Ninth Circuit.
June 28, 1937.

Charles R. Leonard, W. D. Kyle, and J. A. Poore, all of Butte, Mont., for appellant.

Carl J. Christian and William Meyer, both of Butte, Mont., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is the second appeal in this case.

The facts proved are not in their essence different from those presented to us on the former appeal. Gamer v. New York Life Ins. Co., 76 F.(2d) 543.

The appellant states its first contention on this appeal as follows:

"The only question of ultimate fact to be determined in this case is: Was the death of Edward Walter Gamer due to accident or suicide?

"Plaintiff alleges that his death resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, and did not result from self-destruction, but from the accidental discharge of a rifle. The answer denies that death resulted directly or indirectly from the accidental discharge of the rifle, and alleges he took his own life."

Appellant describes what it "alleges" concerning suicide as an "affirmative defense." The policy insured against death in the sum of $10,000, and provided for the payment of a double indemnity in the event of death by accident, but that "Double Indemnity *shall not* be payable if the Insured's death resulted from self-destruction, whether sane or insane." (Italics supplied.)

Liability for $10,000 was admitted and that amount was tendered. The appeal concerns the verdict for $20,000; that is, for the second $10,000 of the double indemnity.

Evidence was introduced from which the jury could infer that the special defense of suicide had been established. The District Judge, following the language of the instructions approved in Travellers' Ins. Co. v. McConkey, 127 U.S. 661, 8 S.Ct. 1360, 32 L.Ed. 308, instructed the jury as follows:

"Ordinarily, gentlemen of the jury, *in the absence of a plea by the defendant of suicide or self-destruction,* the burden would be upon, and it still is upon the plaintiff in this case to prove that Walter Gamer died from external, violent and accidental means, but by its answer in this case the New York Life Insurance Company has admitted that Walter Gamer died through external and violent means. So that question is out.

"The question remains as to whether the death was accidentally caused, or the means of death was accidental, or whether it was suicide. But *when the defendant took the position that it takes here,* it assumed the burden of proving to you by a preponderance of the evidence that Walter Gamer killed himself voluntarily. * * *" (Italics supplied.)

And again: "In this case, the defendant alleges that the death of E. Walter Gamer was caused by suicide. The burden of proving this allegation by a preponderance or greater weight, of the evidence is upon the defendant. The presumption of law is that the death was not voluntary, and the defendant in order to sustain the issue of suicide on the part of E. Walter Gamer must overcome this presumption and satisfy the jury by a preponderance of the evidence that his death was voluntary."

The appellant insurance company assigns and asserts error in that portion of the instruction which states that the burden is on the defendant insurer to prove by a preponderance of the evidence that Walter Gamer killed himself voluntarily, asserting the law to be that the burden of proof of suicide is *not* upon the insur-

er where it has raised the issue of suicide, but is on the plaintiff to show death by another accidental cause.

The situation in this case is the same as that in the case of Travellers' Ins. Co. v. McConkey, 127 U.S. 661, 664, 666, 667, 8 S.Ct. 1360, 32 L.Ed. 308, where the Supreme Court considered the question whether such an instruction was error; the policy clause in that case being identical to the one here. In that case the death of the insured by gunshot was under such circumstances as to allow inferences either of suicide or accident. In that case, as in this, there was a general denial that the death of the insured was occasioned by bodily injuries effected through external, violent, and accidental means, and the insurer pleaded specially that the decedent's death was caused by suicide.

The instruction to the jury which the Supreme Court held not error was:

"The defendant, in its answer, alleges that the death of the insured was caused by suicide.

" 'The burden of proving this allegation *by a preponderance of evidence rests on the defendant.* The presumption is that the death was not voluntary; and the defendant, in order to sustain the issue of suicide on his part, must overcome this presumption, and satisfy the jury that the death was voluntary.' * * *

" 'The burden of proof is upon the plaintiff to establish, by a preponderance of credible testimony, that the deceased came to his death from injuries or an injury effected through external, violent, and accidental means, within the intent and meaning of the contract and conditions expressed in the policy.' * * *

" 'It does clearly appear from the evidence that the insured came to his death from injuries or an injury effected through violent and external means, and * * * the presumption is that the means were unintentional on the part of the insured, which the court holds satisfies the contract. This presumed fact is not conclusive, and may be overcome by evidence, if such there is in the case, that the injuries were voluntary or intentional.' " (Italics supplied.)

Travellers' Ins. Co. v. McConkey, supra, 127 U.S. 661, 664, 665, 8 S.Ct. 1360, 1361, 32 L.Ed. 308.

The Supreme Court considered the two methods of raising the issues in the answer which, in that case, were as in the present one; that is, first, the issue presented by the general denial, and, second, the special issue presented as to suicide. Concerning the first issue it states (127 U.S. 661, at page 666, 8 S.Ct. 1360, 1362, 32 L.Ed. 308): "There is no escape from the conclusion that, under the issue presented by the general denial in the answer, it was incumbent upon the plaintiff to show, from all the evidence, that the death of the insured was the result, not only of external and violent, but of accidental, means."

In holding that the instruction in respect to the second issue as to suicide, i. e., that "the burden of proving this allegation by a preponderance of evidence rests on the defendant," was not error, the court held (127 U.S. 661, at page 667, 8 S.Ct. 1360, 1363, 32 L.Ed. 308): "In respect to the issue as to suicide, the court instructed the jury that self-destruction was not to be presumed. In Mallory v. Travelers' Ins. Co., 47 N.Y. [52] 54 [7 Am.Rep. 410], which was a suit upon an accident policy, it appeared that the death was caused either by accidental injury or by the suicidal act of the deceased. 'But,' the court properly said, 'the presumption is against the latter. It is contrary to the general conduct of mankind; it shows gross moral turpitude in a sane person.' Did the court err in saying to the jury that, upon the issue as to suicide, *the law was for the plaintiff,* unless *that presumption was overcome by competent evidence?* This question must be answered in the negative. The condition that direct and positive proof must be made of death having been caused by external, violent, and accidental means, did not deprive the plaintiff when making such proof, of the benefit of the rules of law established for the guidance of courts and juries in the investigation and determination of facts." (Italics supplied).

This court has consistently relied upon and held in accord with the McConkey Case. In Prudential Ins. Co. v. Baciocco (C.C.A.) 29 F.(2d) 966, 967: "It is not controverted that death by drowning is a death by external and violent means within the terms of the policy, nor is it questioned that in cases of this character where such a death is shown there is a presumption against the theory of suicide. Metropolitan Life Ins. Co. v. Broyer (C.C.A.) 20 F.(2d) 818. It is also conceded that by reason of this presumption appellant had the burden of proving the contrary, and that where, as here, evidence of self-

destruction is circumstantial, the insurance company must fail 'unless the circumstances exclude with reasonable certainty any hypothesis of death by accident, or by the act of another.' Tabor v. Mutual Life Ins. Co. (C.C.A.) 13 F.(2d) 765, 769."

In the Broyer Case, referred to above, citing the McConkey Case, we held: "The presumption is that Broyer did not commit suicide, and we cannot say that the jury erred in concluding that that presumption was not rebutted. Travellers' Ins. Co. v. McConkey, 127 U.S. [661] 667, 8 S.Ct. 1360, 32 L.Ed. 308; International Life Ins. Co. v. Carroll (C.C.A.6) 17 F.(2d) 42 [50 A.L.R. 362]."

Metropolitan Life Ins. Co. v. Broyer (C.C.A.) 20 F.(2d) 818, 820.

The Carroll Case last relied upon above is from the Sixth Circuit, and it holds: "The presumptions of law arising from the fact of death are against self-destruction, for human experience shows that it is rare, even among the unhappy. Travellers' Insurance Co. v. McConkey, 127 U.S. 661, 8 S.Ct. 1360, 32 L.Ed. 308. * * * But certainly the law places upon him who relies upon self-destruction the burden of showing it by a preponderance of the evidence." International Life Ins. Co. v. Carroll (C.C.A.) 17 F.(2d) 42, 43, 50 A.L.R. 362.

The same rule is followed in this circuit in the earlier case of Connecticut Mut. Life Ins. Co. v. McWhirter (C.C.A.9) 73 F. 444, 449, 450.

The insurance company contends that three cases from this circuit, United States Fidelity & Guaranty Co. v. Blum (C.C.A. 9) 270 F. 946; Connecticut Gen. Life Ins. Co. v. Maher (C.C.A.9) 70 F.(2d) 441; and New Amsterdam Casualty Co. v. Breschini (C.C.A.9) 64 F.(2d) 887, have overruled this established doctrine. In no one of these cases was there any instruction to the jury as to the burden of proof, and in all the question decided was whether there was any evidence to go to the jury that the cause of death was otherwise than by suicide. All the court held in these cases was that if there was evidence from which the inference could be drawn that the death was otherwise than by suicide, the verdict must be sustained.

In the Blum Case, supra, the court relies for a statement of the law as to the burden of proof on Travellers' Ins. Co. v. McConkey, supra. In the case of New Amsterdam

Casualty Co. v. Breschini, supra, 64 F. (2d) 887, 890, this court held that the evidence established suicide and required an instructed verdict for the insurer. Hence it held that the instruction concerning the burden of proof should not be given, stating:

"There were numerous instructions upon the question of burden of proof and upon the presumption of accident in the case of unexplained injury. They are not applicable to a fully explained injury and should not have been given. See United States F. & G. Co. v. Blum (C.C.A.) 270 F. 946."

In Connecticut Gen. Life Ins. Co. v. Maher, supra, there is no decision as to the effect of the presumption against suicide on the burden of proof. However, we did hold that the defendant had to overcome the presumption against suicide. There is no intimation that the defendant had overcome the presumption by merely going forward with the evidence and causing a disappearance of the presumption. It had to overcome the presumption. Certainly here is nothing which purports to overrule the holding of the Supreme Court in the McConkey Case and of this court in the Broyer and Baciocco Cases, supra.

The Supreme Court, recently, has recognized in its opinions the difference between those presumptions which cast the burden of proof on the party against whom the presumption exists, and presumptions which "vanish" when the party against whom they exist goes forward with the evidence and produces sufficient to warrant an inference overcoming the presumption. In the latter class of presumptions the party in whose favor the presumption exists still has the burden of proving the fact which the presumption supports.

This distinction is summarized in Atlantic Coast Line R. Co. v. Ford, 287 U.S. 502, 506, 53 S.Ct. 249, 250, 77 L.Ed. 457. There the court compares the presumption casting the burden of proof on the party against whom it is raised in the case of Western & Atlantic R. R. v. Henderson, 279 U.S. 639, 643, 49 S.Ct. 445, 447, 73 L.Ed. 884, with the presumption which vanishes when the party against whom it exists goes forward with evidence tending to overcome it, recognized in Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A.(N.S.) 226, Ann. Cas.1912A, 463. The summary of the Henderson Case is as follows: " 'Each of the

state enactments raises a presumption from the fact of injury caused by the running of locomotives or cars. The Mississippi statute created merely a temporary inference of fact that *vanished* upon the introduction of opposing evidence. * * * That of Georgia as construed in this case creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail *unless such testimony is found by the jury to preponderate.'"* (Italics supplied.) Atlantic Coast Line R. Co. v. Ford, 287 U.S. 502, 506, 53 S.Ct. 249, 250, 77 L.Ed. 457.

The Supreme Court in the McConkey Case, supra, has decided, in a case identical with that at bar, that the presumption against suicide belongs to the class of permanent presumptions of the Henderson Case, and not the vanishing presumption of the Turnipseed Case. It squarely holds that it casts the burden of proof upon the insurer. This court is not in a position to hold either that the McConkey Case has been overruled or that the law is left in a condition in which we may treat the question as one before us de novo.

This distinction between "vanishing" or temporary presumptions and permanent presumptions which "prevail unless such [opposing] testimony is found to preponderate" places the Supreme Court as not in agreement with the strongly reasoned and historically fortified conclusions of Professor Wigmore and Professor Thayer. According to them there is, properly speaking, only one kind of presumption, the kind which "vanishes" upon the going forward with the evidence to a point raising a contrary inference by the party against whom the presumption is raised. Wigmore, Evidence, vol. 5, § 2491; Thayer, Preliminary Treatise on Evidence, 339, 346.

In addition to the cases before cited, two recent opinions of the Supreme Court recognize the existence of both kinds of presumptions. In Heiner v. Donnan, 285 U.S. 312, 329, 52 S.Ct. 358, 362, 76 L.Ed. 772, the Supreme Court states, "A rebuttable presumption clearly is a rule of evidence which has the effect of shifting the burden of proof." Whether or not there is a "shifting" of the burden, this is the type of presumption recognized as placing the burden of proof of suicide on the insurer in the McConkey Case. The opinion describes it as "a substitute for proof."

In the case of Del Vecchio v. Bowers, 296 U.S. 280, 284 et seq., 56 S.Ct. 190, 192, 80 L.Ed. 229, the court holds a statutorily created presumption against suicide to be of the vanishing character described by Professors Thayer and Wigmore and recognized in the Turnipseed Case. In the Del Vecchio Case a congressional statute created a liability in an employer upon the death of his employe engaged in a maritime occupation. The liability arises from death in the course of such employment. The statute further provides that:

"In any proceeding for the enforcement of a claim for compensation * * * it shall be presumed, *in the absence of substantial evidence to the contrary*—

"(a) That the claim comes within the provisions of this chapter.

"(b) That sufficient notice of such claim has been given.

"(c) That the injury was not occasioned solely by the intoxication of the injured employee.

"(d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another." (Italics supplied.)

33 U.S.C.A. § 920.

The peculiar language of the statute will be noted. It is that death otherwise than by suicide "shall be presumed, in the absence of substantial evidence to the contrary." The court holds that, where there is no "absence" but *presence* "of substantial evidence to the contrary," the presumption ceases to exist.

The court confines its ruling to the limiting provision of the statute and is not ruling on the legal effect of the unrestricted presumption against suicide, stating (296 U.S. 280, at page 286, 56 S.Ct. 190, 193, 80 L.Ed. 229): "The *act under consideration,* however, does not leave the matter to be determined *by the general principles of law, but announces its own rule."* (Italics supplied.) Certainly this has no application to a policy which specially *excepts* liability for suicide in the clause reading: "Double Indemnity shall not be payable if the Insured's death resulted from self-destruction, whether sane or insane."

The presumption against suicide in the McConkey Case is not of the character of the one created by the peculiar words of the statute of the Del Vecchio Case. It is not controlled by the limiting words of

the statute. Congress is dealing solely with employers' liability and its provisions for that status cannot be construed as declaring a new rule of presumption in insurance cases. Under the McConkey Case the presumption is one which *continues* to exist in the *presence* of evidence to the contrary of which there must be a "preponderance" produced by the insurer to overcome it.

The court in the Del Vecchio Case, supra, does not mention the McConkey Case, and we are unable to believe that it intends to overrule that case sub silentio and likewise to overrule its decision in Atlantic Coast Line R. Co. v. Ford, 287 U.S. 502, 53 S.Ct. 249, 77 L.Ed. 457, and Western & Atlantic R. R. v. Henderson, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884, by a holding that *all* presumptions vanish once the parties against whom they exist merely go forward with evidence tending to support a contrary inference. In refusing to accept such a silent submersion of the prior decision in the McConkey Case, we are moved by the confusion into which the litigants and the legal profession would be thrown if the Supreme Court is deemed to overrule while it avoids the mention, much less the consideration of, a case which long ago established and has maintained a rule of law upon which they relied.

Confusion enough now exists as evidenced by the opposing holdings of the Sixth, Eighth, and Ninth Circuits as against those of the Fourth and Fifth Circuits.

The Sixth and Eighth Circuits hold, with this circuit, that the McConkey Case declares the law. New York Life Ins. Co. v. Ross (C.C.A.6) 30 F.(2d) 80, 83; New York Life Ins. Co. v. Anderson (C.C.A. 8) 66 F.(2d) 705, 710.

The Fifth Circuit, without mentioning the McConkey decision, has held that the presumption against suicide does not cast the burden on the insurer. Fidelity & Casualty Co. of New York v. Driver (C. C.A.) 79 F.(2d) 713, 715. The Fourth Circuit deems the McConkey Case not to be the law and frankly accepts the views of Thayer and Wigmore. Jefferson Standard Life Ins. Co. v. Clemmer (C.C.A.4) 79 F. (2d) 724, 731, 103 A.L.R. 171. It does not consider any of the decisions of the Supreme Court we have cited recognizing the existence of the type of presumption controlling in the McConkey Case.

■ The District Judge exercised his prerogative of commenting on the evidence, and appellant claims as error that certain of his comments are argumentative. We cannot consider this because no objection or exception was taken below.

■ It is also claimed of an instruction that the bullet passing through the head of the deceased "must have been deflected and was deflected as I instruct you as a matter of law if it came into contact with any solid body or smooth surface" is not a matter of law and is not true as a matter of physics.

In this the appellant is correct. What a bullet does when it comes in contact with any solid body or smooth surface is not a matter of law but a matter of fact. The fact is that a bullet coming square onto and into a solid body having a smooth surface may not be deflected at all. The ricochet effect referred to in our opinion on the first appeal is where the bullet strikes "a smooth surface at a slight angle." However, this was harmless error, because it was the contention of the appellant that the bullet was deflected and the only evidence in the case on this subject is that it was deflected.

■ Objection was made to an instruction that a witness had testified that it was uncertain and speculative as to how much a bullet would be deflected on passing through the man's skull, and that the judge's recollection of the testimony was that there was no testimony concerning the bullet "as to what angle it will go in, how far it will diverge from a direct line." This comment had reference to the movement of the bullet from the muzzle of the gun into and through the skull and the amount it would be deflected thereby. The testimony was in answer to a question concerning the amount of deflection, if any, of the bullet *"from* the *time* it *passed through* the man's head within that range, by the time it struck the ceiling." The witness testified that *from* the time it passed through he believed "it would not be more than two or three inches at the *outside."* This does not contradict the judge's statement concerning the absence of evidence as to the deflection during the complete time from before it passed through the man's head, the passing, and thereafter.

Error is claimed in the manner in which the jury was instructed that the insurance company had the right to make an autopsy. However, the claim that the manner was unfair and sought to create a wrong im-

pression on the minds of the jurors is not supported by any objection or exception made at that time.

Error is claimed in an instruction to the effect that there "were no financial difficulties" with reference to a motive for the suicide of the deceased. No objection or exception was taken to the instruction on this ground.

We find no error in the record warranting a reversal of the judgment.

Affirmed.