## NEW YORK LIFE INS. CO. v. GAMER.
### No. 9063.

Circuit Court of Appeals, Ninth Circuit.
Aug. 16, 1939.

Writ of Certiorari Denied Dec. 11, 1939.

See 60 S.Ct. 294, 84 L.Ed. ——.

WILBUR, Circuit Judge, dissenting.

Charles R. Leonard, W. D. Kyle, and James A. Poore, all of Butte, Mont., for appellant.

Carl J. Christian, S. O. Meyer, and William Meyer, all of Butte, Mont., for appellee.

Before WILBUR, DENMAN, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is the third appeal in this case, and the issues of fact involved have been sufficiently stated in our former opinions. Gamer v. New York Life Ins. Co., 9 Cir., 76 F.2d 543; New York Life Ins. Co. v. Gamer, 9 Cir., 90 F.2d 817. There is new evidence for insurer concerning the character of the bullet and its angle of emersion from the back of Gamer's skull, and for the insured concerning his business activity shortly before his death. Each party moved for an instructed verdict. There is no such overwhelming preponderance of evidence for either party as requires our holding error the refusals of the trial court to instruct a verdict for either.

In the trial which produced the judgment from which the second appeal was taken it appeared that the plaintiff, executrix of decedent's will, had produced evidence in support of the issue of accidental death tendered by her complaint that the death of deceased was caused by a gunshot in the head. The trial court instructed the jury that in this situation the presumption against suicide shifted the burden of proof to the insurance company, and that it must establish the insured's suicide by a preponderance of the evidence. On appeal we sustained the instruction, our entire opinion resting upon the decision in Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 664, 666, 8 S.Ct. 1360, 32 L.Ed. 308, et seq., which, we assumed, established the law as above stated. We intimated a doubt as to whether that case correctly stated the law, but felt bound by it. Though it lurked in the case, there was no consideration or mention of the effect of the then existing body of statutory law of Montana on presumptions with reference to the *quantum* of evidence necessary to overcome them, bringing the case within Burns Mortg. Co. v. Fried, 292 U.S. 487, 493, 495, 54 S.Ct. 813, 78 L.Ed. 1380.

On this second appeal the Supreme Court granted certiorari and reversed, holding that we erred as to the *quantum* of evidence required to overcome a rebuttable presumption; that such a presumption is not evidence; that it does not shift to the defendant the burden of proof on the issue it supports; that it does not require a preponderance of the evidence to overcome it; that the effect of the presumption here against suicide is merely to require the defendant to go forward and produce sufficient evidence to support a finding of suicide; and that when the defendant has produced that amount of evidence, the presumption against suicide disappears even though there is other strong evidence of accidental death.

The insurance company claims this holding of the Supreme Court is the law of the case. If it be, the company is correct in its contention that it has been violated in an instruction, later stated, concerning a presumption as affecting the issue of suicide, in which the court not only failed to advise the jury that it would disappear if there were introduced evidence sufficient to support a finding of suicide, but ascribed an effect to the presumption strongly supporting plaintiff's contention of accidental death.

However, this issue of law presented by appellant in this regard differs from that on the last appeal. Here the present challenged instruction concerning the effect of the presumption is cast in the terms of the statutory law of Montana which in exact words is incorporated in it. Its validity does not concern the general nonstatutory law of the state as declared by its courts. For the reasons now stated, we do not agree with appellant's contention that the rule stated in the Supreme Court's opinion is the law of the case with reference to this new issue of law as to the validity of the instruction.

In our opinion in the second appeal we treated the case, under the rule in Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, as one where, *in the absence of controlling state statutes,* the federal courts have the power to determine the law of a state, though its determination may differ from that of the courts of that state. Not only was no state statute considered in the opinion, but no decision of any of the Montana courts. We assumed that we were controlled by what sometimes has been called the federal common law. The fact that all the federal courts have judicial knowledge of the Montana statutes, made the question one that could and should have been decided in accordance with that law, but that was not done. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. See New v. Oklahoma, 195 U.S. 252, 256, 25 S.Ct. 68, 49 L.Ed. 182; Tefft, Weller & Co. v. Munsuri, 222 U.S. 114, 119, 32 S.Ct. 67, 56 L.Ed. 118; United States v. More, 3 Cranch 159, 172, 2 L.Ed. 397; The Edward, 1 Wheat. 261, 275, 276, 4 L.Ed. 86. * * *." Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411.

The opinion of the Supreme Court assumed, as did ours, that there were no statutes of the State of Montana determining the effect of a rebuttable presumption. In its citation of authority it mentions but one Montana case concerning the *quantum* of evidence necessary to overcome a rebuttable presumption, in which no reference is made to the statutory law of that state in that regard. There was a dissent by Mr. Justice Black

in which there is no mention of any of these Montana statutes. New York Life Ins. Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218.

Since the question of Montana's statutory law on the effect of a rebuttable presumption was not "discussed and decided" by the Supreme Court in this "case of a *reversal*", the decision of the Supreme Court with respect to the general non-statutory law of the function and effect of a rebuttable presumption is not the law of the case  That question is now presented for discussion and decision for the first time.

█ "While undoubtedly an *affirmance* of a judgment is to be considered an adjudication by the appellate court that none of the claims of error are well founded,—even though all are not specifically referred to in the opinion,—yet no such conclusion follows in *case of a reversal*. It is impossible to foretell what shape the second trial may take *or what questions may then be presented*. Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions *in terms discussed and decided*." (Emphasis supplied). Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 553, 554, 24 S.Ct. 538, 539, 48 L.Ed. 788; Wolff Packing Co. v. Court of Industrial Relations, 267 U.S. 552, 562, 45 S.Ct. 441, 69 L.Ed. 785; Hartford Life Ins. Co. v. Blincoe, 255 U.S. 129, 135, 136, 41 S.Ct. 276, 65 L.Ed. 549; Georgia Railway & Electric Co. v. Decatur, 297 U.S. 620, 623, 624, 56 S.Ct. 606, 80 L.Ed. 925. Cf. Messinger v. Anderson, 225 U.S. 436, 443, 444, 32 S.Ct. 739, 56 L.Ed. 1152.

█ Montana's code provides that a presumption does not disappear when there is merely enough evidence to support a finding adverse to it. It remains as "indirect evidence", Revised Codes of Montana, 1935, Section 10600, until rebutted by a preponderance of the evidence to the contrary. This preponderance must be weighed and determined by the trier of fact. The Montana courts interpret its code section 10606 as meaning that a presumption "fades away" only when the party to whom it is opposed produces sufficient evidence to preponderate against it. In re Wray's Estate, 1933, 93 Mont. 525, 535, 19 P.2d 1051; Nichols v. New York Life Ins. Co., 1930, 88 Mont. 132, 140, 141, 292 P. 253; Monaghan v. Standard Motor Co., 1934, 96 Mont. 165, 173, 174, 29 P.2d 378; McLaughlin v. Corcoran, 1937, 104 Mont. 590, 597, 69 P.2d 597.

The Montana law also requires that a jury must be instructed that a "presumption or *other* evidence" may not be overcome by the "declarations of any number of witnesses, which do not *produce conviction* in their minds * * *." (Emphasis supplied). Revised Codes of Montana (1935) Section 10672, subdivision 2. The Montana Supreme Court cites to this provision:

"A statutory disputable presumption is satisfactory if uncontradicted. Renland v. First Nat. Bank, 90 Mont. 424, 4 P.2d 488. The statute commands that it must be followed if uncontroverted. Section 10604, Rev.Codes, 1921. Whether sworn testimony to the contrary is sufficient to rebut such a statutory presumption is a question for the triers of fact to determine, except where the facts proved are overwhelmingly against the presumed facts and permit of but one rational and reasonable conclusion. Renland v. First Nat. Bank, supra; subdivision 2, § 10672, Id." McMahon v. Cooney et al., 95 Mont. 138, 144, 145, 25 P.2d 131, 133. Cf. Decision of California Supreme Court on the earlier California code section identical with Montana's, People v. Milner, 122 Cal. 171, 54 P. 833, 837.

The court gave an instruction, construing with reference to the question of suicide or accident the statutory presumption, " * * * 28. That things have happened according to the ordinary course of nature and the ordinary habits of life." Revised Codes of Montana, 1935, Section 10606.

Appellant stated no objection below on the ground that the Montana statutory provisions concerning the *quantum* of evidence to rebut a presumption had not been properly stated. The instruction was:

"It is presumed in law that things have happened according to the ordinary course of nature and the ordinary habits of life, so in determining whether or not Mrs. Gamer has borne the burden of proving her case by a preponderance of the evidence or not, you have the right to deal with the question according to the ordinary course of nature, and in that connection may ask yourself whether under all the facts in the case here it would be according to the ordinary course of nature for a man acting naturally in the situation that Walter Gamer was to go upstairs and deliberately kill

himself; or is it more reasonable to suppose, that is, is it according to the ordinary course of nature for a man in the situation of the deceased, Walter Gamer, to desire to continue to go on in life; and if you find that according to the ordinary course of nature it is more reasonable to suppose that he would desire to go on in life, enjoying the things he had and bearing the burden which may have been his; then you ask yourself is it according to the ordinary habits of life for a man such as Walter Gamer was, as shown by the evidence here, considering the ordinary habits of life, or the ordinary habits of men in the situation that he was, for him to go upstairs and shoot himself intentionally for the purpose of destroying his own life. Or is it more reasonable, according to the ordinary habits of life to suppose that he went there for the purpose of getting his gun to go hunting or to take with him on a fishing trip and that by some fortuitous circumstance, not intended by him, the gun was discharged and brought about the result that has been detailed here.

"So, gentlemen, getting back to the simple rule here, you are instructed that if you find from a preponderance of the evidence that the death of Edward W. Gamer was not due to suicide, but resulted directly and independently of all other causes, from bodily injury effected solely through external violent and accidental means, and occurred within ninety days after such injury, then your verdict should be for the plaintiff and against the defendant, New York Life Insurance Company, a corporation, for the sum of twenty thousand dollars, * * *".

Appellant claims, first, that the instruction is error because "there is now no room in this case for a presumption of accidental death; that the evidence has entirely dissipated any presumption of accidental death and such presumption has entirely disappeared from the case and the case now stands for decision upon the evidence unaffected by any presumption that death was due to accident." We have held to the contrary that there is no such preponderance in the evidence establishing that the death was not accidental.

■ It also contends that the instruction is erroneous because "before an inference may be deduced or drawn by the jury, the evidence must not only tend to prove the efficient proximate cause relied upon, but must tend equally to exclude any other. In other words, if the evidence furnishes a basis for two equally permissible conclusions, one of which speaks accident while the other points to suicide, the case must fail for want of sufficient evidence, and no verdict may be based thereon", and because there are no facts from which absence of suicide may be inferred, and the inference from suicide, if any is possible, can be drawn only from another inference.

There is secondary evidence concerning the deceased's health, happiness, business affairs, relationship to his family, and purpose for which he was holding the rifle when he was shot, from which it may be inferred directly that suicide was not the cause of his death and from which suicide cannot be inferred as the cause. Since the evidence of these facts warrants the inference, there is no basing an inference on an inference. There is no error in the overruling of appellant's objections.

Objections similar to those stated were offered to other instructions concerning the Montana statutory law regarding secondary evidence and inferences therefrom. What we have said applies to these objections, and we find no error in their overruling.

■ Appellant offered in evidence a large model of the closet in which Gamer was shot. It was based upon figures and facts given in evidence. We believe it well may have been helpful to the jury, but its admission was a matter within the trial judge's discretion both under the Montana law, section 10599, Revised Codes of Montana, 1935, and generally in federal and state courts. We cannot hold that he abused it.

Affirmed.

WILBUR, Circuit Judge (dissenting).

I dissent. The question presented by the main opinion is whether or not the plain mandate of the Supreme Court should be obeyed. I hold that it should.

I say "plain mandate" because the only question presented to or considered by the Supreme Court was as to the effect of the presumption against suicide. We had affirmed the judgment and had approved the following instruction:

"The presumption of law is that the death was not voluntary, and the defendant in order to sustain the issue of suicide on the part of E. Walter Gamer must overcome this presumption and satisfy the jury

by a preponderance of the evidence that his death was voluntary." New York Life Ins. Co. v. Gamer, 9 Cir., 90 F.2d 817, 818; Id., 303 U.S. 161, 58 S.Ct. 500, 501, 503, 82 L.Ed. 726, 114 A.L.R. 1218.

The Supreme Court held that when the defendant produced evidence sufficient to sustain a verdict of suicide (that is, substantial evidence of suicide) the presumption against suicide vanishes, and the jury should not have been instructed on the subject of that presumption, and remanded the case to the District Court to proceed in accordance with that opinion. I quote the language of the opinion of the Supreme Court in that regard as follows:

"The evidence being sufficient to sustain a finding that the death was not due to accident, there was no foundation of fact for the application of the presumption; and the case stood for decision by the jury upon the evidence unaffected by the rule that from the fact of violent death, there being nothing to show to the contrary, accidental death will be presumed. The presumption is not evidence and may not be given weight as evidence. * * * The challenged instructions cannot be sustained."

The District Court inadvertently disregarded the mandate. Indeed, it went beyond the instruction which we had approved and which the Supreme Court had rejected on the former appeal and instructed the jury that the presumption of law that things had occurred in the ordinary course of nature must be followed by them, overlooking the fact that at most the presumption was disputable.

The majority hold that the District Court was in duty bound to disregard the plain mandate of the Supreme Court to it because it is believed that if the Supreme Court again considers the case its decision would be different for the reasons stated by the majority.

I assume that in view of the fact that the majority of this court has declined to apply that mandate the Supreme Court will review the case. I therefore point out that the trial court and both parties in that court, and here as well, have presented the case on the theory that the mandate of the Supreme Court is binding on the court and on the parties and, consequently, that the presumption against suicide was and is out of the case. No instruction to the jury to the contrary was requested by either side. The case ought not to be decided on appeal on a different theory. Certainly not without giving the parties a chance to be heard on the proposition now advanced by the majority of this court that the Supreme Court was wrong in reversing our previous decision.

If we are convinced that the Supreme Court was in error in its former opinion because a statute of Montana was overlooked, or for any other reason, we should certify the question to the Supreme Court for it alone has power to disregard the law of the case and to correct its former opinion, if erroneous.

I agree that by the Montana law as declared by statute and by judicial decision the jury should be given an instruction that they should apply the presumption against suicide unless convinced that it is overcome by a preponderance of the evidence. I think the Supreme Court · will so hold when the matter is properly presented. But the fact that the Montana statutory law was not presented to the Supreme Court does not justify an inferior court in disregarding the directions of a higher court.

### Objections to Instructions on Presumptions.

In accordance with the new rules at the close of the evidence the parties submitted their proposed instructions (Rules of Civil Procedure No. 51, 28 U.S.C.A. following section 723c). Only one instruction was objected to by the appellant, and none by the appellee. This instruction, mainly couched in the language of the definitions of the Montana code, was the only one wherein any reference was made to a "presumption". The instruction objected to was instruction "F" proposed by the plaintiff and is as follows:

"You are instructed that the laws of Montana specify several degrees of evidence, including, amongst others, that which is designated as 'direct and indirect', as 'prima facie', and as 'satisfactory' evidence.

"You are further instructed that indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence.

"The jury are further instructed that prima facie evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence.

"The jury are further instructed that that evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind. Such evidence alone will justify a verdict.

"Given over objection: Baldwin."

The defendant's objection thereto was as follows:

"The Court: The Court proposes to give plaintiff's instruction No. F.

"Mr. Poore: Defendant objects to the Court giving the proposed instruction No. F. tendered by Plaintiff, and objects to the Court instructing the jury that 'Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence' for the following reasons:

"That any such statement is misleading to the jury;

"For the further reason that there is now no room in this case for a presumption of accidental death;

"That the evidence has entirely dissipated any presumption of accidental death and such presumption has entirely disappeared from the case and the case now stands for decision upon the evidence unaffected by any presumption that death was due to accident;

"For the further reason that such a statement and instruction to the jury permits them to resort to speculation and chance in arriving at their verdict and without basing it upon evidence.

"Defendant objects to the Court instructing the jury that they may infer from the evidence that Walter Gamer's death was caused by accidental means, no fact having been shown from which accident may be reasonably inferred;

"And for the further reason that before an inference may be deduced or drawn by the jury, the evidence must not only tend to prove the efficient proximate cause relied upon, but must tend equally to exclude any other; in other words, if the evidence furnishes a basis for two equally permissible conclusions, one of which speaks accident while the other points to suicide, the case must fail for want of sufficient evidence, and no verdict may be based thereon.

"An inference must rest upon reasonable certainty or preponderatory probability to be considered as evidence. must be exclusive of other inferences which are just as natural, material and deducible from the fact proved;

"Further, the inferred fact must have an immediate connection with or relation to the established fact from which it is inferred. If it has not, it is too remote and all evidence in the case from which it is sought by plaintiff to infer accident is too remote.

"The only inferences which the law recognizes are immediate inferences from facts proved. The law requires an open and visible connection between the principle or evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences.

"Further, no inference in favor of accidental death or death by accidental means, is permissible here, because an inference may not be deduced from another inference, but may only be deduced from a fact legally proved.

"The defendant further objects and excepts to the Court instructing the jury or advising the jury that death by accidental means may be *inferred or presumed* from any evidence in this case.

"The Court: The objections are overruled.

"Mr. Poore: We ask for an exception.

"The Court: The exception will be noted." (Italics mine)

It will be noted that the defendant objects " * * * that there is now no room in this case for a presumption of accidental death", thus squarely presenting the point settled by the decision of the Supreme Court. Were it not for further instructions given by the Judge of his own motion, the giving of this statutory definition of indirect evidence might be held harmless error. The objection was well taken. The fact that the statutory definition of indirect evidence included a "presumption", did not justify the giving of that portion of the definition referring to "presumptions", if the definition was not applicable to the case. The giving of the instruction was error.

The trial Judge, after ruling on the proposed instructions as indicated, gave a charge to the jury which covers twenty-six pages of the transcript. The proposed instructions given were interspersed therein, with added comment and illustration. At the close of the charge the appellant made additional objections to the charge. I quote excerpts from the charge dealing

with presumptions, omitting the portions dealing with inferences:

"The oath you took when you entered upon the performance of your duty is that you do solemnly swear that you will well and truly try the case at issue and a true verdict render thereon according to the law as given to you by the Court and the evidence, so help you God. So you see, gentlemen, under your oath you take the law from me. You don't question it. You accept it as the law of the case and act upon it; * * *

"Among these rules of evidence which will control your decision here are these: The law of Montana which controls the decision here specified several degrees of evidence. Evidence is of many kinds; among others is that which is designated as direct and indirect, prima facie, and satisfactory evidence. This Court is bound and you are bound by this statement as to the law. It is fixed by statute. In determining this case, there is, as I have told you, provided by statute, evidence designated as direct, also evidence designated as indirect. Direct evidence is defined by law in Montana as that which proves the fact in dispute directly without any *inference or presumption* and which in itself, if true, conclusively establishes that fact. Now, gentlemen, there is no direct evidence as to just what Walter Gamer was doing at the time of or immediately preceding the time at which the shot which caused his death was fired. In other words, there is no direct evidence which, without *inference or presumption,* can decide this case. But the law does not require, in order that plaintiff may recover here, that she prove that her husband died as the result of accidental means by direct evidence, because the law of Montana is that there are several degrees of evidence, direct and secondary, or direct and indirect. Turning to the definition of indirect testimony, we find that indirect evidence is that which tends to establish a disputed fact by proving another and which, though true, does not of itself conclusively establish that fact, but which affords an *inference or presumption* of its existence. So, gentlemen, you will see that it is not necessary that the plaintiff here should prove by direct evidence that Walter Gamer died as the result of accident, but she may prove that by evidence which tends to establish that fact by proving other facts. And the other facts that may be considered by you here and are

properly in evidence are the nature of the decedent, his disposition, his apparent attitude toward life, his social, his family, his financial and business relations, and you are called upon to determine after considering all of these, in the light of all the other testimony, whether it is reasonably likely that the decedent died as the result of accidental means. * * *

"It is admitted by all the parties that he did die as a result of external and violent means. The question is then whether he died as a result of accidental means. Again we have, as I say, certain degrees of evidence and among them, as I have told you, indirect evidence. Now indirect evidence may be of either one of two kinds, *inferences and presumptions.* * * *

"As I have told you indirect evidence is of two kinds, *inferences and presumptions.* An inference is a deduction which you draw from a proven fact and your experience as men considered in the light of the rules that I have just given you. A presumption on the other hand is a deduction which the law expressly directs you to make from particular facts and *where the law directs that you shall make that presumption, it must be made by you.*

"It is presumed in law that things have happened according to the ordinary course of nature and the ordinary habits of life, so in determining whether or not Mrs. Gamer has borne the burden of proving her case by a preponderance of the evidence or not, you have the right to deal with the question according to the ordinary course of nature, and in that connection may ask yourself whether under all the facts in the case here it would be according to the ordinary course of nature for a man acting naturally in the situation that Walter Gamer was to go upstairs and deliberately kill himself; or is it more reasonable to suppose, that is, is it according to the ordinary course of nature for a man in the situation of the deceased, Walter Gamer, to desire to continue to go on in life; and if you find that according to the ordinary course of nature it is more reasonable to suppose that he would desire to go on in life, enjoying the things he had and bearing the burden which may have been his; then you ask yourself is it according to the ordinary habits of life for a man such as Walter Gamer was, as shown by the evidence here, considering the ordinary habits of life, or the ordinary habits of men in the situation that he was, for him to go upstairs and

shoot himself intentionally for the purpose of destroying his own life. Or is it more reasonable, according to the ordinary habits of life to suppose that he went there for the purpose of getting his gun to go hunting or to take with him on a fishing trip and that by some fortuitous circumstance, not intended by him, the gun was discharged and brought about the result that has been detailed here."

To these instructions the appellant made the following objection: .

"Mr. Poore: In addition to the exceptions and objections heretofore dictated into the record on the original settlement of the instructions and hereof made a part by reference, the defendant interposes the following additional exceptions and objections:

"The defendant objects and excepts to the Court instructing or advising the jury that death by accidental means may be *inferred or presumed* from the fact or facts that Walter Gamer was a loving husband and father, or in easy financial circumstances, or of a jovial and cheerful disposition, or of good health, or fond of fishing and hunting, or not complaining of circumstances in life, or of easy circumstances in life, or by his nature, or by the clothing that he wore at the time of his death, or the place where he customarily kept his rifle, or the presence or absence of clothing and other paraphernalia in the closet where he died or from any evidence in the case for the reason that:

"Such *inferences or presumptions* do not exclude the inference of suicide as the proximate and efficient cause of Walter Gamer's death, and that the inference of death by accidental means is not a probable or natural explanation of the cause of death.

"That it is seeking to build an inference on an inference which is not permissible, an inference being only deducible from a fact legally proved.

"That death by accidental means is not shown to be the immediate consequence or result of any facts proven.

"Defendant objects to the Court instructing or advising the jury that under the evidence in this case it may be *presumed or inferred* that Walter Gamer took ordinary care of his own concerns, for there is no evidence here that will sustain any such presumption or inference.

"And the defendant objects and excepts to the Court advising the jury in this case that things have happened according to the ordinary course of nature or the ordinary habits of life, or that it is more reasonable to suppose they so happened, or that the ordinary course of nature, or that the ordinary habits of life generally or of Walter Gamer may be considered by the jury as evidence of accidental death in arriving at their verdict for that there is no evidence in this case on which any such *inference or presumption* may be presumed or inferred or drawn.

"That any *presumption or inference* of accident in this case from any evidence now in the case and before the jury is inapplicable and inadmissible under the evidence and facts and under the law for the reason that there is no evidence in the case which sustains any such *presumption or inference*, but the evidence on the contrary entirely does away with the basis for any such *inference or presumption* as the case now stands for decision; and the evidence does not warrant any *presumption or inference* by the jury that the death of the insured Gamer was due to any accidental means.

"The Court: The objections will be noted and each of them is overruled.

"Mr. Poore: We ask for an exception to the ruling of the Court on each objection.

"The Court: It will be noted." (Italics mine)

It will be noted that these objections are directed to statements concerning "presumptions or inferences" of the charge. The objections as to the right of the jury to draw "inferences" from the facts proved is not well taken. On the other hand the objection to the charge as to presumptions was well taken. If the attention of the Judge had not been sharply drawn to the fact that the presumption against suicide was out of the case as far as the jury was concerned, by the first objection above noted to the definition of indirect evidence, it is a matter of some doubt whether the objections made to the charge given by the Judge were sufficiently definite to call the attention of the Judge to the distinction between the right of the jury to draw inferences and the duty of the jury to apply presumptions of law stated to it by the Judge. But the Judge had elaborated the difference between inference and presump-

tion in his charge to the jury and was fully advised by the objections of the appellant first above stated, that the appellant claimed that the jury should not be instructed as to a presumption against suicide. Consequently, there could be no misunderstanding resulting from the disjunctive "inference or presumption" in the objection. Clearly the appellant was objecting to the instructions as to inference and also as to presumption. For these reasons I am of opinion that the objection to the charge was sufficient to call the attention of the Judge to the error involved in instructing the jury that there was a presumption that "things have happened according to the ordinary habits of life" interpreted as it was by the Judge to cover the presumption against suicide.